## League Island Community Building & Loan Association, Appellant, v. Doyle.

Argued January 15, 1936; reargued May 11, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Otto Kraus, Jr.,* with him *Harold D. Greenwell,* for appellant.

*David S. Malis,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

On November 10, 1926, Albert Carapellotti made application to the League Island Community Building & Loan Association for a loan of $4,000, to be secured by a second mortgage on premises already subject to a first mortgage of $6,000. At that time defendant was the association's solicitor and it was at his suggestion that Carapellotti applied for the loan. One week later a resolution approving the loan was passed. The association then discovered that the assessed valuation of the property was not as high as represented in the application. This was brought to the attention of defendant. In reply he informed the association that if it "should at any time suffer any loss by reason of [the] loan . . . [he would] hold [himself] responsible for the same." Relying on this assurance the association made the loan, taking in return Carapellotti's bond and mortgage, dated December 1, 1926, and payable within one year. Contemporaneously therewith the borrower subscribed for twenty shares of stock in the 14th series of the League Island Community Building & Loan Association. The mortgage provided "that if the within mortgagor shall at any time sell or convey the premises herein described, then the principal of the mortgage debt hereby secured shall become immediately due and payable, anything to the contrary hereinabove mentioned notwithstanding."

In May, 1927, the debtor defaulted in the payment of his dues to the association and defendant was requested

to institute foreclosure proceedings. In view of the fact that the premises had recently been conveyed by Carapellotti to one Nicholas Mastrippolito, who tendered the payment of all the arrearages, defendant advised against foreclosure and his counsel was accepted. Subsequently, the shares of stock standing in the name of Carapellotti were transferred to Mastrippolito, who executed a collateral bond to the association, and undertook the performance of the covenants imposed by the terms of the original bond and mortgage. On May 22, 1929, defendant resigned as solicitor of the association and thereafter knew nothing of its affairs. On August 6, 1929, Mastrippolito conveyed the premises to Francisco and Columbia D'Abbundo and Charles D'Abbundo; the shares of stock were again transferred and the various payments on account of dues, interest and taxes were thenceforth paid by the new grantees. Defendant knew nothing of this conveyance. In 1931 the League Island Community Building & Loan Association merged with the Army & Navy Building & Loan Association, forming a new corporation and adopting the latter name. The new corporation is the present plaintiff. The original shares in the Carapellotti loan (20 shares in the 14th series of the League Island Community Building & Loan Association) were replaced by shares in the 23d series of the new association. Early in 1932 the first mortgage was foreclosed and the lien of the second mortgage was discharged. Plaintiff received nothing from the proceeds. To recover the amount due and unpaid upon the loan to Carapellotti, this action of assumpsit was brought. The case was tried by the court without a jury. Findings of fact and conclusions of law were filed. Exceptions filed by plaintiff were dismissed. Judgment was entered for defendant.

The court below based its decision on the following conclusions of law: First, that defendant entered into a valid and binding agreement with the League Island Community Building & Loan Association to protect it

from loss by reason of a loan made by it to one Albert Carapellotti; second, that the defendant incurred no liability under this contract until actual loss occurred upon the loan to Carapellotti; third, that the League Island Community Building & Loan Association never sustained any loss by reason of the loan to Carapellotti; and fourth, that by merger on July 15, 1931, the League Island Community Building & Loan Association ceased to exist and a new corporation, The Army & Navy Building & Loan Association, came into existence with whom the defendant did not contract and to whom he is not liable for any loss incurred subsequent to the merger.

Under the plain terms of the defendant's pledge his liability to plaintiff could not come into being until the latter had suffered a loss by reason of making the loan to Carapellotti. The burden of proving this loss was upon the plaintiff and it was not met by proving that the lien of the second mortgage, which it had accepted as security for its loan, had been discharged by the foreclosure of the first mortgage in 1932. In *Equitable Trust Co. v. Nat. Surety Co.,* 214 Pa. 159, 63 A. 699, this court said: "The covenants in a bond should be construed to mean what the parties intended in so far as that intention can be ascertained by the words used." This was quoted with approval in *Purdy v. Massey,* 306 Pa. 288, 293, 159 A. 545. The words used in the contract herein sued upon leave one in no doubt as to what the parties intended. There was no definite date set when the liability was to accrue except that it was to accrue when the League Island Community Building & Loan Association should "suffer any loss by reason of [the] loan." In *Homewood Peoples Bank v. Hastings,* 263 Pa. 260, 106 A. 308, this court, in an opinion by Mr. Justice FRAZER, said: "Where there is no time fixed, the obligation is general and merely that of guaranty." Before plaintiff can proceed to a recovery against defendant, it must exhaust all available remedies against the original debtor. There is no proof that it has done this. Defend-

ant's undertaking was collateral and secondary. The plaintiff was obliged to resort in the first instance to the debtor. The defendant would become liable only after the primary debtor had proved to be insolvent and the creditor had used due diligence to obtain payment from him, but without success. See *Hoffman v. Bechtel,* 52 Pa. 190. In *Nat. B. & L. Society v. Lichtenwalner,* 100 Pa. 100, at 104, this court said: "It may be stated as a general rule sustained by the authorities that the prompt prosecution of the claim against the debtor to judgment, the issuing of an execution and a return of nulla bona would be at least prima facie evidence of his insolvency, and of due diligence on the part of the creditor." Plaintiff here did not make out a prima facie case of due diligence on its part in collecting its claim against the original debtor or in demonstrating his insolvency.

Plaintiff contends that "when defendant agreed to be responsible for 'any loss by reason of the loan,' he must have understood that the wiping out of the second mortgage fell within his obligation." We cannot accept this extremely literal interpretation of the words used. The second lien on a property which the lender accepted as security, was presumably only a security of doubtful value at best. The lender looked primarily to Carapellotti, and later to his successors, Mastrippolito and the D'Abbundos, these being successors each following the other, both in title to the property liened and as shareholders in plaintiff association, for the repayment of its loan. The wiping out of its second lien, whose value when the loan was made it questioned and brought to the attention of the defendant, its then solicitor, would be a matter of indifference to the plaintiff, if it could collect the amount of its claim against that person or those persons primarily responsible, for its payment. It was under the law obliged to proceed with due diligence but unavailingly to do this, before it could present to the defendant both legal proof of, and a legal measure of, that loss which he had agreed to make good.

The first three conclusions of law of the court below are sustained. It is not necessary to discuss the fourth conclusion.

The judgment is affirmed.