KELLER, P.J., filed a dissenting opinion, in which JAMES and RHODES, JJ., concurred.
Argued October 8, 1937.
This is an action in assumpsit. The plaintiff, Margaret R. Villani, seeks to recover from the defendant, the Italian Workingmen Building and Loan Association, the sum of $361.93 with interest, representing her claim for profits on certain shares of stock which she had owned in the association. After trial, the jury rendered a verdict for the plaintiff in the sum of $440.76. The court below, having refused defendant's motions for judgment n.o.v. and for a new trial, its action is assigned as error.
As shareholder in the association, the plaintiff owned, prior to her withdrawal, five shares of stock in the 11th Series on Book No. 650 and ten shares of stock in the 17th Series on Book No. 982. She had paid monthly into the association on the five shares of stock, up to the time of her notice of withdrawal, $660 in dues, and on the ten shares of stock $960 in dues. Prior to April 29, 1932, a by-law of the association relating to the share of profits to which each withdrawing member was entitled provided, inter alia, that shares held for eleven years were entitled to one-hundred per cent of the profits earned by each share according to the last yearly report, and that shares held for eight years were entitled to seventy-five per cent of the profits. On this basis of computation, plaintiff would be entitled, by virtue of her holding shares under two separate series of stock, to $361 profits at the time of her withdrawal. However, on April 29, 1932, the board of directors of the association adopted a resolution to the effect, "That from this date, hereafter no profits or interest shall be paid on withdrawals or cancellation of stock held in this Association" for the purpose of initiating an amendment to the prior by-law pertaining to the distribution of profits. This resolution was to be ratified by the stockholders at a meeting on December 5, 1932, and thus complete the amendment of the prior by-law. *Page 333 
Counsel for the defendant admitted of record that this by-law was not properly amended. On January or on April of 1933, plaintiff gave defendant association notice of her withdrawal. On July 20, 1933, plaintiff transferred by an assignment under seal to the defendant association, her five shares of stock under the 11th Series, and received a check in the amount of $194.25, being the difference between $660, the amount she had paid in dues, and $465.65, representing a stock loan she had made and interest thereon. On August 28, 1933, plaintiff transferred by a similar assignment her ten shares of stock under the 17th Series, and received a check in the amount of $284, being the difference between $960, the amount she had paid in dues and $676, representing another stock loan and interest thereon. Plaintiff received no profits on her stock. It was admitted that the defendant association was solvent at all times. It was further admitted by the defendant association that the proposed by-law intended to amend the existing by-law on the subject of distribution of profits was invalid and of no effect under the Act of April 10, 1879, P.L. 16. Hence the question raised in the case of Marshall v. Pennsylvania Savings B. L. Asso. 115 Pa. Super. 296, 175 A. 739, is not involved in this case.
Appellant contends, however (1) that the transaction whereby appellee assigned her shares to the association and accepted, in return, a check including no profits was completed under a mistake of law on the part of both as to the validity and legality of the new by-law, and hence appellee is precluded from further recovery; and (2) that the transaction amounted in law, to a compromise and settlement, an accord and satisfaction, or a release between the parties involved; and (3) that appellee is estopped from further recovery.
Even if it be assumed that the transaction was negotiated under a mutual mistake of law, it is clear that the *Page 334 
effect of this mistake cannot be invoked to the advantage of the appellant. The general rule is that a mistake of law will not affect the enforceability of a contract (13 C.J. 379 Sec. 267;Berks Dauphin Turnpike Rd. v. American T. T. Co., 240 Pa. 228,87 A. 580), nor will it permit the recovery of money paid thereunder, in the absence of fraud (Kennedy's Est., 321 Pa. 225,183 A. 789). In the instant case, the only transaction to which the mistake of law might possibly refer, is the one whereby appellee assigned her stock to the association and accepted a check in return not including profits. Appellant's position is therefore based on the ground that it has entered into an agreement or received some benefit in the nature of a compromise and settlement, or accord and satisfaction, or a release, which a mistake of law could not render void to the advantage of the appellee. But did the transaction between the association and appellee amount in law to any of these? That it did is the appellant's second contention.
It is proper to point out at this point that there is a grave doubt as to whether there was any mutual mistake of law. Since the old by-law on the subject of the distribution of profits was admittedly not properly amended, it is doubtful whether the appellee, as a member of the association, had notice of the existence of the amending by-law. Certainly there is no evidence to show that she had actual knowledge of the existence of the new by-law. Hence it appears that the association alone, rather than the appellee, was proceeding under an illusion as to the legal situation. The appellee was probably assuming that her rights as to profits were the same as they were prior to April 1932, and governed by the then-existing by-law. It appears to us, for an additional reason, therefore, that appellant's contention as to the affect of a mistake of law, if any, is entirely without merit. *Page 335 
The learned trial judge submitted to the jury, the question as to appellee's intention to effect a compromise and settlement, or an accord and satisfaction, or a release by the assignments under seal of her shares to the association. The jury found for the plaintiff in the court below. That the jury was amply justified in its decision is strongly supported by the evidence that nothing was said to her and that nothing was explained to her at the time she delivered the assignments to the secretary of the association and took the checks not including the profits in return. Although there appeared on the back of each check a statement of how the amounts of the check were arrived at, there was nothing on them to indicate that the amounts thereon endorsed were the full withdrawal values of her shares. Considering the evidence on this point, it certainly cannot be said that the transaction amounted by operation of law to a compromise and settlement, or to an accord and satisfaction, or to a release. There was nothing in word or in substance in the instruments which appellant executed and delivered to the secretary of the association beyond a bare assignment of her shares in the association, to which assignment defendant was entitled upon payment of the withdrawal value to the plaintiff.
Appellant contends further that the appellee is estopped from further recovery. With this contention we cannot agree. The appellant relies upon an extract from Kennedy's Estate, supra, at p. 232 quoting Philadelphia Reading Coal Iron Co. v. Schmidt,254 Pa. 351, 357, 98 A. 964. The latter case involves a question of laches arising in a bill in equity to enjoin collection of taxes alleged to have been improperly levied. We consider the remainder of the same paragraph in Kennedy's Estate, supra, from which we quote, to be more applicable to question of estoppel as raised here: "In Wagoner v. Phila. 215 Pa. 379, 382, it was stated by this court: `It would be most unreasonable to permit an *Page 336 
employee to receive his pay without objection or dissent, from time to time at a fixed rate, for a considerable period, and thereafter present a claim for additional compensation. If the amount received was not satisfactory the employees should have quit work, or raised an objection then and there; so that the department would have been put upon notice, and would have exercised its option of meeting the demand or finding someone else to do the work for the rate of pay deemed sufficient. We can only look upon the continuance in employment, as an expression of satisfaction by the workmen with the amount of the compensation; and the receipt of payments every two weeks throughout the whole period, is to be deemed an estoppel against the assertion of any claim for additional compensation at this time. Under the circumstances, continuance in the employment of the department from day to day can only be regarded as acquiescence in the rate of wages fixed by the department.'" In the instant case, the appellee cannot be charged with continuance of a course of conduct that expressed satisfaction with the amount she had received. Her only conduct was refraining from bringing suit. This she had a right to do so long as she was not barred by the period of limitations for bringing suit. She cannot be charged with inducing reliance upon a complete settlement which she never had intended or made. Not only was the association not justified in relying upon what it considered to be a complete settlement, but it failed to introduce any evidence that it had expended moneys which it would otherwise not have expended. There is in fact no evidence of reliance and no evidence of a detriment incurred as a result of such reliance.
Under the circumstances of this case, it is appropriate to restate what we have said before in the case of Marshall v.Pennsylvania Savings B. L. Asso., supra, at p. 298: "It is contrary to the underlying principles of our *Page 337 
building and loan association laws to deprive withdrawing stockholders of their just proportion of the corporate assets, if the association is solvent."
Assignments of error are dismissed and judgment affirmed.