E. P. Wilbur Trust Company, to use, Appellant,
*v*. Eberts et al.

Argued December 4, 1939.   Before SCHAFFER, MAXEY,
DREW, LINN, STERN and BARNES, JJ.

*Allen S. Olmsted, 2nd,* with him *Herbert J. Hartzog* and *Francis C. Brown,* for appellant.

*Morris Perkin,* with him *Russell C. Mauch,* for appellees.

OPINION BY MR. JUSTICE MAXEY, January 2, 1940:

This case involves the construction of a written bond or indemnity agreement under seal given by defendants to the plaintiff bank in 1924 at the time when another bank, of which defendants were officers and directors, merged with the E. P. Wilbur Trust Company. Plaintiff entered judgment against defendants on the bond, which was opened on the petition of the appellees, two of the defendants. Appellant, assignee of the judgment, contends that the order opening the judgment was error.

In January, 1924, Peoples Trust Company of South Bethlehem was in a financially precarious condition. Negotiations were begun for a merger whereby Peoples would be taken over by the E. P. Wilbur Trust Company. Appellees Eberts and Metzger were directors of Peoples and Eberts was its president. On January 17, 1924, the Secretary of Banking formally notified Eberts that the examination which the Department of Banking had made of the Peoples Trust Company indicated an impairment of capital to the extent of $72,134.45, and that this impairment would have to be made good by the directors. The officials of the Department of Banking had appraised all the trust company's assets and estimated their depreciation in value, i. e., the amount of loss which would occur in liquidation. The Department of Banking refused to approve the merger between Peoples and Wilbur unless the directors obligated themselves immediately to the extent of this impairment of capital.

A meeting of the board of Peoples was held on January 23rd, at which appellees were present. The min-

utes of this meeting state that it was "for the purpose of considering a bond to be given to the E. P. Wilbur Trust Company in the sum of $75,000 to be signed by each director . . . this bond to be secured by collateral to the extent of $50,000 to be put up in equal amounts by each of the individuals signing the bond, this to secure the Wilbur Trust Company on account of" certain designated indebtedness to the Peoples Trust Company, whose assets were being taken over by Wilbur in the proposed merger. The Department of Banking had, of course, no knowledge of this meeting or of any arrangements reached by the directors among themselves. On the 25th of January eighteen directors signed the bond, by which they bound themselves to both Peoples and Wilbur in the sum of $75,000. This instrument recites the impairment of capital, stated to be $72,000, as found by the Secretary of Banking, the proposed merger, the refusal of the secretary to approve it until both trust companies were secured "against loss by reason of the aforesaid impairment," and the desire of the directors to secure the banks against such loss "by means, inter alia, of this indemnifying bond," and then expresses the condition as follows: "NOW, THEREFORE, if the said Obligors shall and will from time to time and at all times hereafter save, keep harmless and indemnify the said Peoples Trust Company, South Bethlehem, Pa., and the said E. P. Wilbur Trust Company and their successor or successors and assigns, and their respective goods, chattels, assets, lands and tenements of and from all actions, costs, damages, losses, claims and demands whatsoever that may arise out of, for or on account of any assets which the said Peoples Trust Company, South Bethlehem, Pa., now carries on its books as such, then this obligation to be void, otherwise to be and remain in full force and virtue." The bond concludes with a warrant of attorney to confess judgment against the obligors, upon which the judgment in the case at bar was ultimately entered.

On the same day, January 25, 1924, the same directors entered into a written agreement with the E. P. Wilbur Trust Company whereby certain collateral was deposited by them with the latter. The agreement makes substantially the same recitals as the bond and refers to the impairment of Peoples' capital amounting to $72,000. It provides for the deposit by the directors of collateral consisting of securities listed on an annexed schedule, for the sale of the same if required and application of the proceeds to make good the impairment of capital. There is nothing in the agreement to indicate any intention to make it, and the collateral securities transferred to Wilbur pursuant to it, subordinate to the bond contemporaneously executed. In fact, neither instrument refers in any way to the other. So far as they indicate on their face, each undertaking was wholly separate and distinct from the other.

The bond and agreement, with the collateral, were delivered to Wilbur, accepted by it in good faith, and the merger effectuated. Eberts became a vice president of Wilbur and both he and Metzger were directors thereafter. The bond and collateral agreement were submitted to the Secretary of Banking. He returned them to Wilbur on January 28, 1924, stating that his department had no objection to them. However, on February 7, 1924, one of the deputy secretaries wrote to Eberts, as president of Peoples, inquiring how the impairment of capital had been made good, whereupon Eberts replied in a letter dated February 9, 1924, stating that this matter had been taken care of to the satisfaction of Wilbur by "collateral to the amount of $50,000 and a bond for $75,000." On March 14, 1924, the president of Wilbur wrote a letter, signed by most of the directors, including Metzger, containing detailed comments on the report of the Department of Banking showing an impairment of Peoples' capital, in the course of which was the statement: "As the Department is aware we hold a bond, which has also been examined

by the Department of $75,000 signed by the Directors of the Peoples Trust Company, which is excellent collateral due to the fact that several of these Directors are worth possibly four times this amount, largely on unencumbered property, and in addition we also hold at this time approximately $43,000.00 bonds and stocks which can also be realized upon. It was the intention to raise a total fund of $125,000, . . . This bond as you know, covers any and all losses that might be sustained through notes or other assets now held by the Peoples Trust Company and which have become the property of the E. P. Wilbur Trust Company. This is a highly advantageous contract for us, as it practically guarantees any and all losses that may occur in the Peoples Trust Company's assets."

The former directors of Peoples, some of whom had become directors of Wilbur Trust Company, thereafter acted in concert, sometimes through a committee of three or four members, in their endeavors to liquidate the assets of Peoples taken over by Wilbur, realize from them as much as possible, and thus reduce their own liability on the bond and deposit of collateral agreement. Their efforts apparently culminated in a special meeting held by the former directors, held September 5, 1930, the minutes of which indicate that they concluded to execute, by a committee of three, and deliver to Wilbur Trust Company a demand note in the amount of $141,000, upon which all the former directors should be liable, the understanding being that this note supplemented but was not in lieu of and did not increase the obligations to Wilbur which they had previously assumed. A note in this amount, with such a reservation stated on its back, was signed by the committee and delivered to Wilbur Trust Company. It referred to collateral deposited for the same as being "items as per list attached," but what this list exactly contained was a matter of dispute between the parties. We do not deem this feature of the case important, how-

ever, except as furnishing the basis for fixing the amount of the judgment subsequently entered on the bond. After the $141,000 note was given, certain credits from liquidation of Peoples former assets were applied against that amount, so that by June 7, 1934, it had been reduced to $68,618.28. On that date the treasurer of Wilbur Trust Company made an affidavit that this sum remained due on defendants' bond of January 25, 1924, and, without any specification whatever of items of liability or credits, the bond was thereupon entered as a judgment against appellees and others, in the amount last stated above.

Appellees moved to strike off the judgment, but this motion was denied by the court below. Meanwhile, the judgment was assigned by the plaintiff to and marked to the use of the appellant, Federal Deposit Insurance Corporation. Separate petitions to open the judgment were filed by appellees. Depositions were taken and the court below opened the judgment, holding (1) that the bond on which it had been entered was not an agreement of guaranty or suretyship but one of indemnity, requiring proof of actual loss to be passed upon by a jury after pleadings to be filed by the parties; and (2) that the scope of the bond was sufficiently broad to include liability for losses sustained on any and all assets of Peoples taken over by Wilbur Trust Company to the limit of the penal amount of the bond, and should not be confined to those assets on which the Department of Banking estimated a probable loss resulting in impairment of capital.

The judgment was opened by the court below because of its decision on the first question, that the bond indemnified against loss and was not an agreement to answer for the default of a third party or parties obligated to the Peoples Trust Company. Appellant contends that this ruling was erroneous, and that since the bond contained no express language denying an intention to create an obligation of suretyship, the Act

of July 24, 1913, P. L. 971, sec. 1 (8 PS sec. 1), applies, providing that in the absence of such language "every written agreement . . . to answer for the default of another" shall subject the obligor to the liabilities of suretyship. But the distinction between an indemnity against loss and an agreement of guaranty or surety-ship, to answer for another's default, is a substantial one and is firmly imbedded in our law. Here appellees obligated themselves to "save, keep harmless and in-demnify . . . of and from all actions, costs, damages, losses . . ." The language of the bond is that of *indemnity, not suretyship*. Appellees agreed to reimburse plaintiff for any loss sustained on an asset received from the bank which it took over (e. g., a defaulted ob-ligation due that bank), but not to make payment if the obligor thereon did not, without any proof that plaintiff took reasonably adequate steps to realize on the asset or on the supporting collateral. Instances arise where the party primarily liable defaults yet the obligee (guarantee or indemnitee) sustains no loss, as for example, where the collateral deposited as secur-ity suffices to discharge the debt in full.* Our conclu-sion in the instant case is that proof of actual loss must be submitted to a jury before recovery can be had upon the bond invoked, even though this ruling renders in-efficacious the warrant of attorney to confess judgment.

This case is ruled by *Mfrs. and M. B. & L. Assn. v. Willey et al.*, 321 Pa. 340, 183 A. 789, where we con-strued a collateral indemnity agreement against loss sustained on a bond and mortgage. We held, in words equally applicable to the case at bar (pp. 343-344) that appellee's bond "imposed upon him merely the obli-gation to secure the plaintiff against any loss . . . The record discloses no such loss . . . The showing

---

* See note in 87 U. of Pa. L. Rev. 465, 471, where the cases are reviewed and the various distinctions which the many decisions have made in this field of the law are pointed out.

of an actual loss is a prerequisite to recovery . . . Until the plaintiff has proved that it has sustained actual loss . . . [appellee] is not liable on the collateral bond . . . The covenants in a bond should be construed to mean what the parties intended in so far as that intention can be ascertained by the words used: *Equitable Trust Co. v. Nat. Surety Co.,* 214 Pa. 159, 63 A. 699. If, however, the language is not free from doubt, then the circumstances surrounding the making of the bond and particularly the purpose for which it was given, should be taken into account: *March v. Allabough,* 103 Pa. 335. Consideration of these principles of interpretation leads us to support the conclusion of the court below that the bond in question was one of indemnity. . . . Actual loss is a question of fact and must be determined by a jury." See also *League Island Community B. & L. Assn. v. Doyle,* 323 Pa. 287, 185 A. 636; *Purdy v. Massey,* 306 Pa. 288, 159 A. 545; *Weightman v. Union Trust Co.,* 208 Pa. 449, 57 A. 879, and annotations in 103 A. L. R. 1395. There was no abuse of discretion in opening the judgment: *Schuylkill Trust Co. v. Sobolewski,* 325 Pa. 422, 190 A. 919.

Technically the second question stated above, relating to the scope of the bond, which was discussed and determined by the trial judge, does not properly come before us on this appeal, since it relates *not* to whether appellees have a meritorious defense to the entry of judgment but to *the extent of their liability* under the bond in case appellant is entitled to judgment upon proof of losses sustained. Since, however, the evidence on this branch of the case was extensive and the scope of the trial to ensue depends upon a decision, we will consider it. Our conclusion is that the court below correctly held that the bond imposed liability on the defendants for losses sustained on any and all assets taken over by plaintiff from the Peoples Trust Company.

Appellees point out that the purpose of the bond, as evidenced by its preliminary recitals, was to restore an impairment of capital *found to exist* by the examination of the Department of Banking. From this they argue that the bond must be construed as imposing liability only for losses ultimately sustained on *those assets of Peoples upon which the Department of Banking estimated a loss would occur,* in declaring an impairment of value. If the bond had *referred specifically* to the threatened losses on *those particular items,* this contention would have weight. But the only reference is to an *impairment of capital,* which, as we have pointed out, was only an estimate based on an appraisal of all the assets. This could not be final or conclusive; it was merely the best available means at the moment, under the existing circumstances, of reaching a tentative calculation of the loss which had up to that moment been sustained. Upon liquidation it might be found that losses would have to be borne on assets previously thought worth their face value, and that other assets were worth more or less than estimated. Appellees and their co-directors understood thoroughly that to maintain their institution as a going concern and complete the merger these losses or impairments had to be made good. The phrase "impairment of capital" is referable rather to decline in value of the bank's *entire* assets. If the parties had intended to impose any such limitation on their liability as they now plead, they should have done so. The language used in the condition of the bond is broad enough to cover every asset of Peoples Trust Company. In fact, the amount of the bond is fixed at $75,000, although the impairment to be restored was only $72,155.89. This supports the inference that the directors did not have in mind only losses on particular items when they signed the bond.

The prior resolutions of the directors at the meeting held January 23, 1924, two days before the bond and collateral deposit agreement were signed, have but

little bearing on the question of interpretation. So far as the record discloses, their deliberations were not communicated to Wilbur Trust Company or to its officers or to the Secretary of Banking. The bond and agreement make no reference to each other. If the deposit of collateral was intended by the directors only as security for performance of the bond, such intention was manifested in no writing. The subsequent acts of the directors, including appellees in particular, negative their right to a credit on the bond of the proceeds of the collateral, as well as any intention not to be bound for losses on any and all of the assets transferred. We refer to the two letters quoted above, one written by appellee Eberts, stating that the impairment had been met by *both a bond and deposit of collateral,* and the other from Wilbur Trust Company's president to the Secretary of Banking, signed by appellee Metzger, referring to the deposit of collateral as being "in addition" to the $75,000 bond, which was to cover "any and all losses that might be sustained through notes or other assets" of Peoples, and to the intention of the directors "to raise a total fund of $125,000." It is not clearly apparent from the record why the subsequent note for $141,000, dated September 5, 1930, and signed by a committee of the directors, was given, but it is a fair inference that it was intended to protect against *all* and not merely those losses disclosed when an impairment of capital was first discovered. As the court below pointed out in its opinion: "The total [of this note] was made up from Peoples paper past due at that time."

Nothing we have said is in conflict with the principles announced in *Berkovitz's Appeal,* 319 Pa. 397, 179 A. 746, a case which dealt with the rights of creditors and depositors of a merged bank against collateral securities deposited for their benefit to restore an impairment of capital, where the merged institution subsequently became insolvent and was taken over by the Secretary

of Banking, as is not the situation in the case at bar. Of course, no determination is here attempted of what is or is not a loss within the meaning of the terms of the bond. That issue is not before us.

The order is affirmed.