421 A.2d 220

ALEXANDER & ALEXANDER, INC.

v.

CENTRAL PENN NATIONAL BANK and John G. Berg and Franklin Equity Corp., (Formerly Franklin National Properties, Inc.) and Arcon, Inc. and Applied Resources Corp., and/or Applied Resources Associates and Bo Brock Realty Company and Walton Road Corp., and John Lofton, Inc. and English Village Associates and Montgomery County Industrial Development Authority and Plymouth Meeting Management Corp., and James W. Hughes & Co., and J. W. Hughes Construction Co.

Appeal of John G. BERG.

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed July 3, 1980.

Ronald J. Levine, Philadelphia, for appellants.

Jess Leventhal, Philadelphia, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

HESTER, Judge:

Appellant John A. Berg brings this appeal from an Order of the court below refusing to release collateral posted for a bond.  We affirm.

Pertinent facts are as follows.  In 1975, appellee Alexander & Alexander, Inc., secured a judgment by default for $18,254.19 against various defendants, including Berg, in Philadelphia County, which judgment was then transferred to Montgomery County.  Alexander obtained a writ of execution, but the defendants petitioned for and were granted a stay of execution, Pa.R.Civ.P. 3121.  For the required bond, Berg posted $37,500.00 of his own preferred stock.  The bond filed with the court on April 7, 1976 contained the following clause, the construction of which is much disputed by the parties:

> Now if the said Obligor, [Berg] his heirs or his personal representatives, shall and will satisfy the judgment, inter-

est and costs, within ninety (90) days hereinafter, then the above obligation to be void and of no effect, and otherwise to be and to remain in full force and virtue until leave of Court is granted to further pursue the execution.

Following unsuccessful appeals to this Court and the Supreme Court challenging the default judgment,[1] Berg petitioned and was granted a modification of the judgment against him personally, fixing the amount at $502.00 plus interest. This sum he paid to Alexander, who then requested the court to vacate the stay of execution, which request was granted. Berg then petitioned for the return of his $37,500.00 worth of collateral stock, arguing that a necessary condition of the bond was satisfied, viz: "until leave of court is granted to further pursue the execution." Following argument, Berg's request was denied, and this appeal followed.

The lower court and appellee Alexander argue that the quoted portion of the bond contains two conditions, both of which must be fulfilled before the collateral may be released: 1) the obligor must satisfy the full judgment, and (2) the court must grant leave to further pursue execution. Berg counters that these two conditions are in the disjunctive. He concedes that the first condition has not yet been met since his payment of $502.00 plus interest does not satisfy the full amount due from him as obligor. But he avers that the fulfillment of the second condition, leave to pursue execution, is sufficient to now authorize release of the collateral.

The covenants in a bond should be construed to mean what the parties intended, so far as that intention can be ascertained from the language. If the language is not free from doubt, however, the circumstances surrounding the making of the bond and the particular purposes for which it was given should be taken into account. In any event, the provisions of a bond capable of two or more meanings are construed most strongly against the obligor.

1. See, *Alexander & Alexander, Inc. v. Central Penn Banking*, 244 Pa.Super. 517, 371 A.2d 502 (1976), alloc. den. Jan. 31, 1977.

*E. P. Wilbur Trust Co. v. Eberts*, 337 Pa. 161, 10 A.2d 397 (1940); *Manufacturers & Merchants B. & L. Assn. v. Willey*, 321 Pa. 340, 183 A. 789; *Emery v. Metzner*, 191 Pa.Super. 440, 156 A.2d 627 (1959); *Krewson v. Erny*, 158 Pa.Super. 380, 45 A.2d 240 (1946); 5 P.L.E. Bonds, § 21.

■ We agree with the court below that the use of the word "and" links the two conditions of the bond: satisfaction of the judgment *and* leave of court to pursue execution. Employment of a different conjunction joining the two clauses may well have suggested that the parties intended only that one or the other of the conditions need to be fulfilled before the bond is discharged. See, e. g., 9 Std. Pa. Prac. pp. 585–6 (use of phrase "but otherwise" joining two conditions of bond). Although the term "and" has sometimes been construed to mean "or" in certain statutory phrases, see, e. g., *In Re Petrash*, 425 Pa. 433, 229 A.2d 878 (1967); *Burgis v. County of Philadelphia*, 169 Pa.Super. 23, 82 A.2d 561 (1951); *Appeal of Martin*, 33 Pa.Cmwlth. 303, 381 A.2d 1321 (1978), appellant has directed us to no authority suggesting this is such a case. Accordingly, we read "and" to embrace its normal meaning of "connection or addition". The term "otherwise" means simply "in a different way or different manner". Webster's Seventh New Collegiate Dictionary (1970). Instantly, "otherwise" is merely an adverb introducing a different condition which must be met *in addition to* ("and") the previous condition before the collateral may be released. In view of these normal definitions of the disputed words, it is clear that the bond recites two conditions, both of which must be fulfilled. Even were we to accept the appellant–obligor's interpretation as another reasonable construction, we would still be required to construe the provisions of the bond most strongly against the obligor. *Commonwealth v. Friedman*, 121 Pa.Super. 591, 184 A. 672 (1936).

Accordingly, the order of the lower court, refusing to release the collateral, is hereby affirmed.

Order affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I am not persuaded by the majority's interpretation of the bond here, but instead read the conditions it states in the disjunctive, that is, before Berg could get back his collateral, either he had to satisfy the judgment against him within 90 days *or* the court had to lift the stay of execution.

In *E. P. Wilbur Tr. Co. v. Eberts*, 337 Pa. 161, 168, 10 A.2d 397, 400 (1940), the Supreme Court stated:

The covenants in a bond should be construed to mean what the parties intended so far as that intention can be ascertained by the words used .... If, however, the language is not free from doubt, then the circumstances surrounding the making of the bond and particularly the purpose for which it was given, should be taken into account. (Citation omitted.)

*See Manufacturers and Merchants Building and Loan Ass'n v. Willey*, 321 Pa. 340, 183 A. 789 (1936); *Krewson v. Erny*, 158 Pa.Super. 380, 45 A.2d 240 (1946); *Barratt v. Greenfield*, 137 Pa.Super. 310, 9 A.2d 188 (1939).

Here, the majority has equated the term "and otherwise," which connects the two stated conditions, with "and," giving as its reason that " 'otherwise' is merely an adverb introducing a different condition which must be met *in addition to* ('and') the previous condition before the collateral may be released." At 222. I cannot agree that the language is as unambiguous as the majority suggests. Webster's Third New International Dictionary Unabridged (1961) has three definitions of "otherwise" when used as an adverb: "1: in a different way or manner; 2: in different circumstances: under other conditions; 3: in other respects." When the second definition is applied here, the bond would seem to provide that if Berg was to get back his collateral, the judgment had to be satisfied, but *in different circumstances*, a lifting of the stay of execution might be sufficient. I find this interpretation of the bond as persuasive as that of the majority, but in any case, at least it demonstrates that the bond is ambiguous.

As noted, *E. P. Wilbur Tr. Co. v. Eberts, supra* at 168, 10 A.2d at 400, when a bond is ambiguous the court must ascertain the parties' intentions by looking to the surrounding circumstances and the purpose for which the bond was given. Here, a consideration of the surrounding circumstances and purpose of the bond shows that it is improbable that the majority's interpretation is correct. Berg and the other defendants posted the bond so that the lower court would stay execution of the judgment against them while they litigated the validity of the judgment in this court and the Supreme Court. The bond was solely to protect Alexander and Alexander's judgment until execution. Once the lower court lifted the stay of execution, which occurred before Berg petitioned for the release of his collateral, the bond no longer served any useful purpose. The collateral should therefore have been released. The majority's interpretation of the bond would require, however, that Berg had previously satisfied the judgment within 90 days of the entry of the bond. It is difficult to understand the reason for this additional requirement, since the bond was only intended to *protect* the judgment, not to serve as a vehicle for *satisfying* it. Once the stay of execution was lifted, Alexander and Alexander was free to execute on the judgment.

Assume the following three cases:

1) Berg had satisfied the judgment in full within 90 days. Under the majority's interpretation, Berg would not be entitled to get back his collateral until the court granted leave to pursue execution on a judgment that had already been satisfied.

2) Berg had not satisfied the judgment in full within 90 days but successfully attacked the judgment on appeal to this court. Under the majority's interpretation, Berg would have had to have paid the judgment within 90 days of the bond even though the judgment was later declared void.

3) Berg had not satisfied the judgment in full within 90 days and had not been successful in attacking the

judgment on appeal to this court or the Supreme Court. The lower court then lifted the stay of execution. Even if Berg satisfied the judgment at this point, under the majority's interpretation the collateral could not be released because the judgment was not satisfied within 90 days of the entry of the bond.

The second case is certainly troublesome: to require Berg to pay the judgment while he was contesting it would effectively eliminate the need for any bond: why would Alexander and Alexander need to protect its judgment with a bond when it had already been paid the amount of the judgment? The third case is perhaps even more troublesome, because it is close to the facts of this case. If we assume that Berg has not at present satisfied the judgment–and this is by no means clear, since Berg argues that his payment of the $502 did satisfy his entire obligation–and that he then decides that he wants to do so, he still could not get back his collateral because the judgment was not satisfied within 90 days of the entry of the bond. I submit that such a result is absurd, and that the only way to render this bond reasonable is to interpret it as permitting the release of collateral now that the stay of execution has been lifted.

I should vacate the lower court's order dismissing Berg's petition and order that his collateral be released.