**CRESTAR MORTGAGE CORPORATION,**

v.

**PEOPLES MORTGAGE CO., INC., et al.**

Civ. No. 91–7990.

United States District Court, E.D. Pennsylvania.

April 7, 1993.

Tina Nugent, Tracy Canuso, Rawle & Henderson, Philadelphia, PA, for Crestar Mortg.

Mark Clemm, Cutler, Clemm & Morris, Plymouth Meeting, PA, for Peoples Mortg.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Before me are (1) a motion for partial summary judgment filed by plaintiff Crestar Mortgage Corporation ("Crestar"), (doc. # 43), seeking a judgment of liability on Count I of the complaint, which demands indemnification from defendant Peoples Mortgage Corporation ("Peoples") for losses and expenses incurred with respect to a mortgage loan sold by Peoples to Crestar; and (2) Peoples' opposition to the motion for partial summary judgment, which it has resubmitted as a cross-motion for partial summary judgment on Count I (doc. # 46). For the reasons that follow, Count I will be dismissed without prejudice as unripe.

I.

Crestar and Peoples are each in the business of servicing and selling mortgage loans on the secondary market. On or about November 6, 1989, Crestar and Peoples entered into a Bi–Weekly Purchase Agreement ("the Purchase Agreement"), whereby Crestar agreed to purchase certain mortgage loans originated by Peoples. The Purchase Agreement—a standard form contract drafted by Crestar—contained a provision, entitled "Indemnity," requiring the mortgage seller (in this case, Peoples) to:

> indemnify and hold harmless [Crestar], its officers, agents, employees and its affiliates (including its parent corporation), from and against any claims, demands, actions, losses, expenses (including reasonable attorney's fees) and liabilities of whatever nature which may be asserted against or incurred by [Crestar] in connection with Mortgage Loans made by [Peoples], any transactions contemplated by this Agreement or resulting from any act or omission to act of [Peoples] in connection with the performance or non-performance by it of this Agreement. This indemnity provision shall survive termination of this Agreement.

Plaintiff's Mem. in Sup., Exh. C. (the Purchase Agreement) at ¶ XXVII [hereinafter "¶ XXVII"].

On or about January 30, 1990, defendant Richard Gottfried purportedly agreed to purchase a residential property at 4 Stonehill Lane in Paoli, Pennsylvania from his sister for $780,000. Three days later, Gottfried applied to defendant National Financial Corporation ("National Financial") for a mortgage loan to finance his purchase of the property. National Financial obtained an appraisal of the property, indicating that its

market value was $780,000, and assigned the loan application to Peoples. Peoples thereafter extended a loan to Richard Gottfried in the principal amount of $507,000 and received from Gottfried a $507,000 note and mortgage on the property. After Peoples forwarded various documents to Crestar, including the appraisal valuing the property at $780,000, Crestar, on February 28, 1990, agreed to purchase the $507,000 loan from Peoples for that amount. The parties agree that the $780,000 appraisal was overinflated.

Gottfried defaulted on the mortgage note after the first payment became due, and Crestar ordered an appraisal of the property, which valued the property at $225,000 as of February 18, 1991.[1] In early September 1991, Crestar demanded that Peoples repurchase the Gottfried loan, citing the terms of the Purchase Agreement; Peoples did not do so. Thereafter, Crestar filed two actions: (1) a mortgage foreclosure action against Gottfried in the Chester County Court of Common Pleas, which is still pending; and (2) the instant federal action (filed on December 30, 1991), which—in addition to asserting a number of claims sounding in contract, fraud and negligence against Gottfried,[2] Peoples, National Financial, and other party defendants—included the indemnity claim at issue today.

Even to the date of the filing of this opinion, the subject property has yet to be sold. Expecting that eventual sale of the Gottfried property—valued at $225,000 in 1991—will

not recoup its investment in the Gottfried loan (which Crestar estimates at $600,000, comprising what Crestar paid for the loan, plus other costs and expenses), Crestar seeks an immediate judgment that People must indemnify Crestar for its losses, the exact amount to be determined at a later date by submissions of proof as to the value of the subject property. Peoples opposes Crestar's motion for partial summary judgment and seeks judgment in its favor on Count I, arguing, among other things, that Crestar's indemnity claim is premature because Crestar's actual losses—if such there will be—cannot be known until the property is sold.

## II.

■ Crestar emphasizes that Count I is a claim for indemnity, not a claim for negligence and fraud. See Plaintiff's Reply Brief at 5. It is well settled under both Virginia and Pennsylvania law[3] that claims of indemnity for loss do not arise until the indemnitee has suffered actual loss or damage. See *Coleman v. City of Bradford*, 415 Pa. 557, 204 A.2d 260, 261 (1964); *Burke v. North Huntingdon Township Mun. Auth.*, 390 Pa. 588, 136 A.2d 310, 315 n. 7 (1957); *McClure v. Deerland Corp.*, 401 Pa.Super. 226, 585 A.2d 19, 22 (1991); *City of Richmond v. Branch*, 205 Va. 424, 137 S.E.2d 882, 886 (1964); *American Nat'l Bank v. Ames*, 169 Va. 711, 194 S.E. 784, 797, cert. denied, 304 U.S. 577, 58 S.Ct. 1046, 82 L.Ed. 1540 (1938).[4] Additionally, federal ripeness doc-

---

1. In its memorandum of law in support of the motion for partial summary judgment, Crestar indicates that *two* appraisals ordered by Crestar, as well as one appraisal obtained by Peoples, valued the property at $225,000; however, there is no indication as to when Crestar's second appraisal and Peoples' appraisal were made.

2. Gottfried is apparently also under investigation by grand juries in Pennsylvania and New Jersey for fraud relating to the transactions involved in the case at bar.

3. The Purchase Agreement chooses Virginia as the applicable law. See Plaintiff's Brief in Sup., Exh. C (the Purchase Agreement) at ¶ XXXVI. However, Peoples questions whether it should be bound by this choice of law provision because the Purchase Agreement, drafted by Crestar, is a contract of adhesion, and Peoples claims never to have received any consideration for agreeing to be bound by Virginia law. I need not today

decide whether to construe the Purchase Agreement in accordance with the law of Virginia or Pennsylvania (Peoples' place of incorporation and the situs of the mortgaged property) because the law regarding the time of accrual of indemnity claims is the same in the two jurisdictions.

4. Related causes of action accrue differently. A claim on a contract of indemnity *against liability* accrues as soon as the liability has become fixed and established, even though the indemnitee has sustained no actual loss when he seeks to recover on the contract. *Coleman v. City of Bradford*, 415 Pa. 557, 204 A.2d 260, 261 (1964); 41 Am. Jur.2d Indemnity § 31, at 721 (1968). However, a contract becomes one of indemnity against liability only if that contract binds the indemnitor to pay certain sums of money or to perform other specific acts for the benefit of the indemnitee. 41 Am.Jur.2d Indemnity § 1, at 687 (1968). ¶ XXVII does not impose upon the mortgage sell-

trine advises against adjudication of questions dependent on " 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Lewis v.*

er the obligation to make specified payments to the mortgage purchaser in the event that the mortgagee becomes liable to the mortgage purchaser; rather, it simply indemnifies—holding the purchaser harmless generally against ultimate losses and damages, as Crestar itself emphasizes; therefore, it is not a contract of indemnity against liability. Besides, a contract of indemnity against liability customarily—although, perhaps, not always—pertains to the indemnitee's liability to a third-party, rather than a third-party becoming liable to the indemnitee, which is typically thought of as a surety or a guaranty undertaking. *See* 41 Am.Jur.2d § 5 at 690 (1968); 38 C.J.S. Guaranty § 5 at 1135 (1943)).

¶ XXVII is not—nor does Crestar contend that it is—a contract of surety or guaranty, under which a cause of action arises upon the default of the principal debtor and, in the case of a surety arrangement, perhaps without even making a demand upon the principal debtor. *See In re Brock,* 312 Pa. 7, 166 A. 778, 781 (1933); *Warner Lambert Pharmaceutical Co. v. Sylk,* 348 F.Supp. 1039, 1043 (E.D.Pa.1971), *aff'd,* 475 F.2d 1398 (3d Cir.1973); 38 C.J.S. Guaranty § 85 at 1255 (1943). A surety is directly, immediately, and jointly liable for the obligation of the principal, 38 C.J.S. Guaranty § 6 at 1136 (1943); however, the language of ¶ XXVII, which nowhere mentions the primary borrower, does not suggest that the parties intended for Peoples to become directly liable on the primary borrower's mortgage note. *See* Pa. Stat. Ann. tit. 8, § 1 (1965) (contract of suretyship constituted by written agreement by one person "to answer for the default of another"). A surety's obligation is usually undertaken at the same time and jointly with the principal, 38 C.J.S. Guaranty § 6 at 1136–37 (1943), which did not occur in the case, and nothing in the surrounding facts and circumstances indicates that Peoples was acting for the benefit of Gottfried or that these parties were otherwise bound in an accessorial capacity. *Cf. In re Brock,* 166 A. at 781.

A guaranty is "a promise to answer for the debt, default, or miscarriage of another person," 38 Am.Jur.2d § 2 at 998 (1968), and an absolute guarantor of payment becomes liable when the primary debtor defaults, although the guarantee has not then suffered actual injury by reason of the default. *See Guth v. Hamlet Assocs.,* 230 Va. 64, 334 S.E.2d 558, 564 (1985); *Continental Leasing Co. v. Lebo,* 217 Pa.Super. 356, 272 A.2d 193, 197 (1970); *see generally* 38 C.J.S. Guaranty § 66, at 1227 (1943). While the use of particular terminology alone does not determine whether a document is an indemnity or a guaranty, *Zanditon v. Feinstein,* 849 F.2d 692, 700 (1st Cir.1988) (noting that the use of the phrase "indemnify and hold harmless" is not itself conclusive of the nature of the undertaking), and the word "guaranty" need not appear in the writing for it to be construed as one of guaranty, 38 Am.Jur.2d Guaranty § 5, at 1001 (1968), still the language

of the instrument should first be considered, 38 C.J.S. Guaranty § 5, at 1135 (1943), and "must indicate, with at least reasonable clearness, an intention to enter into a contract of guaranty. . . ." 38 C.J.S. Guaranty § 18, at 1155 (1943). Accordingly, guaranties of a note's payment are typically created upon explicit agreement "to guarantee payment", *see, e.g., St. Louis Univ. v. Belleville,* 752 S.W.2d 481, 482 (Mo.Ct.App. 1988); *Women's Fed. Savings Bank v. Akram,* 33 Ohio App.3d 255, 515 N.E.2d 939, 940 (1986); *The Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, 643 (N.D.1980); whereas language similar to that employed in ¶ XXVII—for instance where a party obligates itself "to indemnify, protect, and save free . . . from any and all claims, damages, demands . . . ," or "to save, keep harmless and indemnify . . . from all actions, costs, damages, losses"—has been interpreted as that of indemnity, not of guaranty. *Coleman,* 204 A.2d at 260, 261 (*see* list of cases cited as in accord with this proposition); *Wilbur Trust Co. v. Eberts,* 337 Pa. 161, 10 A.2d 397, 400 (1940). Further, even looking beyond the instrument itself to the context in which it was signed, Crestar has provided no evidence that would support a reasonable belief that Peoples intended to stand responsible for defaulting borrowers. (In fact, the only evidence submitted as to general practice with respect to mortgage loan sales—per the affidavit of Peoples' President, Jay Berger—is that mortgage correspondents like Peoples customarily do not insure the performance of any loan).

In short, the language of ¶ XXVII is that of indemnity against loss, and Peoples did not become immediately liable to Crestar upon Gottfried's default. While Crestar cannot now sue Peoples to secure the performance of Gottfried's primary obligation, it is a separate question—one that, for the reasons discussed in the text, I regard as not ripe for adjudication and will not now decide—whether Peoples' undertaking to indemnify Crestar against losses included a promise to hold Crestar harmless in the event that sale of the subject property did not cover the amount of outstanding debt (or whether, as Peoples claims, ¶ XXVII covers only losses resulting from third-party actions against Crestar). *See* 38 Am. Jur.2d § 17, at 1016, 1017 (1968) (noting that promises to indemnify the buyer against loss due to a decline in value of the goods or agreements by a third person to indemnify a mortgagee against loss due to a landowner's failure to reduce the principal sum as agreed have been held contracts of indemnity rather than contracts of guaranty). Such an indemnity obligation, if it exists, would not insure the ability, solvency or performance of the principal debtor, but rather would insure that the security on the mortgage note is ample to prevent a deficiency in the event of the principal debtor's default. Because dependent on an ultimate deficiency, such an indemnity claim must await the actual deficiency.

*Continental Bank Corp.*, 494 U.S. 472, 480, 110 S.Ct. 1249, 1255, 108 L.Ed.2d 400 (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409 (1985)).[5] Although Crestar anticipates a loss because the Gottfried property has been appraised at a value lower than the amount that Crestar is owed, Crestar will suffer actual loss only *if* the property is sold for less than Crestar is owed (and if Gottfried does not pay the deficiency, *see supra* note 5). *See Bank of Three Oaks v. Lakefront Properties*, 178 Mich.App. 551, 444 N.W.2d 217, 219 (1989) ("When property is purchased at a foreclosure sale for an amount equal to the amount due on the mortgage, the debt is satisfied."); *Rohm & Haas Co. v. Lessner*, 168 Pa.Super. 242, 77 A.2d 675, 677 (1951) (plaintiff suing under "hold harmless" clause has no cause of action when he has suffered no pecuniary loss).[6] Crestar's recommendation of an immediate determination as to liability and postponement of the question of damages to a separate hearing, where Crestar will submit proofs as to the value of the property, does not avoid the problem that damages based on the property's estimated value may not actually be realized in the event that the property is ultimately sold *for more than the appraisers anticipate*—whether due to escalating market value of the property, inaccurate appraisal, or any individual bidder's willingness

---

**5.** Federal ripeness doctrine also counsels against adjudication of questions that might be altered or dissolved by further action in the state court. *See* Charles A. Wright et al., *Federal Practice and Procedure* § 3532.1, at 122 (1984). A foreclosure action currently is pending in the Chester County Court of Common Pleas. While generally a mortgage foreclosure action does not impose any personal liability upon the mortgagor against whom the judgment is obtained since its purpose is simply to effect judicial sale of the mortgaged property, *see Meco Realty Co v. Burns*, 414 Pa. 495, 200 A.2d 869, 871 (1964); Penn.R.Civ.P. 1141(a), a deficiency judgment can be assessed in a mortgage foreclosure action when the mortgagee's complaint in mortgage foreclosure requests both an in rem judgment and an in personam judgment and no objection is made thereto by the mortgagor(s). *Insilco Corp. v. Rayburn*, 374 Pa.Super. 362, 543 A.2d 120, 123 (1988); *First Seneca Bank v. Greenville Distrib. Co.*, 367 Pa.Super. 558, 533 A.2d 157, 161 (1987); *Kretschman v. Stoll*, 238 Pa.Super. 51, 352 A.2d 439, 441–42 (1975). In *Kretschman*, the Superior Court found that the mortgagee had clearly requested both in rem relief against the mortgaged property and in personam relief against the mortgagor on the mortgage bond, where the mortgage foreclosure complaint read as follows:

> Plaintiffs demand judgment against the Defendants in the amount of forty-five thousand ($45,000) dollars together with interest and attorney's commission and for the other interests, costs, charges collectible under the mortgage *and for foreclosure and sale of the mortgaged property.*

352 A.2d at 441 (emphasis added in *Kretschman*). Crestar's complaint in mortgage foreclosure—included as an exhibit to a motion for stay of civil proceedings in this case, filed by defendants Richard Gottfried and National Financial—includes the following prayer for relief:

> [Crestar] demands judgment against each named Defendant, *jointly and severally in the* total sum stated in paragraph 5 [$565,930.87], plus all additional interest, escrow overdrafts, late charges, mortgage insurance premiums and costs of this suit all as provided in the Mortgage to the date of judgment, *and for sale of the Mortgaged Premises.*

Defendants' Mot. to Stay, Exh. 1 at ¶ 6 (emphasis added). Given the similarity between the prayers for relief in *Kretschman* and the case at bar, it is arguable that the Court of Common Pleas could grant an in personam judgment against Gottfried for any post-sale deficiency on the force of a mortgage foreclosure judgment against Gottfried (should foreclosure be ordered). *But cf. Insilco*, 543 A.2d at 124–25 (holding that mortgage foreclosure complaint requested only in rem relief where, although the complaint demanded "judgment against the defendants ... in the sum of ... [,] a foreclosure of the mortgage premises and a judicial sale thereof," the complaint gave notice simply of a mortgage foreclosure and did not recite the terms of the mortgage bond or request judgment on the bond). A personal judgment against Gottfried, the primary obligor, would crystallize Crestar's indemnity claim against Peoples (if a deficiency judgment were entered against Gottfried and he did not pay) or moot Crestar's indemnity claim against Peoples (if a deficiency judgment were entered against Gottfried and he did pay). The possibility of such further action by the state court presents an additional reason for declining to adjudicate Crestar's indemnification claim at this stage of the proceedings.

**6.** The mere fact that the mortgagor (Gottfried) has defaulted on the mortgage loan is not enough to create actual loss to Crestar under an indemnity clause, because "[i]nstances arise where the party primarily liable defaults yet the obligee (guarantee or indemnitee) sustains no loss, as for example, where the collateral deposited as security suffices to discharge the debt in full." *E.P. Wilbur Trust Co. v. Eberts*, 337 Pa. 161, 10 A.2d 397, 400 (1940). *See supra* note 4 for related discussion of accrual of claims under contracts of suretyship and guaranty.

to pay more than "market" price. I suppose, in the event of a summary judgment of liability against Peoples on Count I,[7] the issue of damages might be postponed until the subject property were sold; even assuming that the apparent absence of a ripe cause of action and attendant Article III limitations do not deprive me of power to issue such a judgment, it would, in my view, be imprudent to follow such a course. *See* 13A Charles A. Wright et al., *Federal Practice & Procedure* § 3532.1, at 118 (1984) (the determination of ripeness rests both on Article III concepts and discretionary reasons of policy). It would be both a substantial waste and an improper use of judicial resources to adjudicate a question of liability that might prove to be utterly meaningless.[8] Further, I can see no great hardship for Crestar in withholding review until the property is sold, given that Crestar, if it ultimately prevails on its indemnity claim, presumably will factor into its damages any additional interest that accrues up to the date of judgment.

### III.

Accordingly, plaintiff's motion for partial summary judgment will be denied, defendant's motion for partial summary judgment will be granted, and Count I will be dismissed without prejudice to its reassertion, by amendment, if and when plaintiff's cause of action accrues (presumably upon the sale of the subject property).

---

**7.** I express no opinion at this time as to whether summary judgment on Count I would be entered in favor of Crestar or Peoples (or for neither party) were the cross-motions to be addressed on their merits.

**8.** Such a determination of liability would resemble a declaratory judgment that Peoples must indemnify Crestar for losses that Crestar may suffer. However, the Third Circuit recently regarded as unripe a request for a declaratory judgment that defendant would be obliged to indemnify plaintiff in the event that plaintiff were held liable in proceedings pending in state court. *See Step–Saver Data Sys., Inc. v. Wyse Technology,* 912 F.2d 643, 646–52 (3d Cir.1990) (noting that such a declaration would be a contingent pronouncement with remarkably little utility).