## Petrash Guardianship.

434

Argued April 28, 1967. Before Bell, C. J., Mus-manno, Jones, Eagen, O'Brien and Roberts, JJ.

*Elias Magil,* with him *Martin H. Philip,* and *Rappeport and Magil,* for appellant.

*Paul A. Barrett,* with him *Eugene Nogi, Roger Nanovic,* and *Nogi, O'Malley & Harris,* for appellee.

Opinion by Mr. Justice Musmanno, May 25, 1967:

Ann Petrash, a resident of Carbon County, was injured on September 12, 1963, in an automobile accident caused allegedly by the negligence of Bertrand Steele. At the time of the accident, Miss Petrash was the recipient of relief provided by the Carbon County Board of Public Assistance. This board petitioned the Court of Common Pleas of Carbon County for the appointment of a guardian to prosecute Miss Petrash's cause

of action against Steele so as to create a fund from which the board could reimburse itself for past expenditures in her behalf and at the same time create a reserve for future maintenance, it being asserted in the petition that Miss Petrash would never become self-supporting. The petition expressly stated that the requested guardianship was to be restricted to Miss Petrash's estate and that it was not to exercise any control over her person. Ann Petrash joined in this petition.

The court, after due consideration, appointed Ruth A. Levenger, a resident of New York, as guardian of Miss Petrash's estate. The foreign residence of Miss Levenger permitted her to institute action in behalf of her ward in a Federal Court and she did file a complaint in trespass against Steele in the United States District Court for the Middle District of Pennsylvania.

Bertrand Steele objected to this procedure and petitioned the Court of Common Pleas of Carbon County to revoke the guardianship on the ground that (1) no citation had ever been issued and served (2) that a foreign guardian had been appointed solely for the purpose of creating diversity of citizenship to confer on a Federal Court jurisdiction over the parties; and (3) that the court had held no hearing on the petition.

The court below properly held that since Ann Petrash had joined in the petition for the appointment of a guardian over her estate, no hearing into the facts asserted therein was necessary, nor did the appointment of a foreign guardian for the express purpose of creating diversity of citizenship invalidate the guardianship. However, the court was of the view that it had no authority to appoint a guardian solely of the estate because the Act under which the appointment was made provided for the appointment of a guardian over the estate *and* the person. Section 6(a) and (b) of the Act of June 24, 1937, P. L. 2045, 62 P.S. §1976,

provides, inter alia: "(a) Any public body or public agency caring for or assisting any indigent person may apply, by petition, to the court of common pleas, if the person is of full age, or to the orphans' court, if the person is a minor, for a citation upon such person to show cause why such public body or public agency, or some other person appointed by the court, should not become the legal guardian of the person and property of such person. . . (b) After hearing, the court may make an order constituting the public body, public agency, or some other person, guardian of the person and estate of such person, . . ."

May the word "and" ever be used to signify the disjunctive rather than the conjunctive? The writer of this opinion would, if his personal predilection were to prevail, answer this question in the negative. If a hungry person in a restaurant orders ham and eggs, it seems to this writer, that no kind of reasoning would justify the restaurateur into arguing that when the diner said "ham and eggs," he really meant ham or eggs and that, therefore, he could only have a couple of eggs *or* a couple of slices of ham.

However, the law is not as simple as ordering breakfast. Down through the years the courts have somehow extended their jurisdiction over the dictionary and have concluded that "and" can mean "or" and "or" can mean "and." No less an illustrious jurist than the scholarly Justice PAXSON said in the case of *Rolland v. Commonwealth,* 82 Pa. 306, 326, in 1876 that "and" and "or", are, in certain circumstances, interchangeable. As late as 1948, this Court said in *Pennsylvania Labor Relations Board v. Martha Company,* 359 Pa. 347, that: "Appellant argues that the word 'and' in Section 8(c) of the Act, '. . . *and* to take such affirmative action. . .' is to be strictly construed as meaning 'in addition to' or 'as well as'. To this we cannot agree. We are convinced that 'and' must be interpreted as to

include 'or', for it is only in this way that the Act, as applied to various factual situations, can retain the flexibility necessary to achieve the aim for which it was intended. . .

"It was said by Mr. Justice GRIER in United States v. Fish, 70 U.S. 445, 447: 'In the construction of statutes, it is the duty of the Court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe "or" as meaning "and", and again "and" as meaning "or".' "

Thus, it would seem that, instead of opening the dictionary to ascertain the meaning of "and" and "or", the courts are looking into the minds of the legislators to ascertain what they intended to accomplish when they used those words. It is clear in this connection that the whole purpose of the Act of 1937 would be frustrated if the Siamese twins embodied in the conjunction "and" could not be surgically separated so that one remains distinct from the other. As Ann Petrash is not a minor, nor is she incompetent, there would be no reason to have a guardian appointed over her person. If the board of public assistance were restricted to seeking guardianship only in cases of minority and incompetence, the Act of 1937 would be valueless. A relief recipient would have no incentive to prosecute a claim for personal injuries when he or she knows that the amount collected would not go to him or her, but to the board of public assistance. In such a situation the board would be powerless to proceed to protect funds it expends on behalf of the taxpayers, even though funds owing the recipient are in esse. A situation could arise where the relief recipient had a valid and profitable claim against a relative, but would refuse to sue his kin, in which case the public assistance body would be helpless in its attempts to get back moneys advanced to the relief beneficiary.

438

To require guardianship to include estate and person or not at all would be violative of §52(5) of the Pennsylvania Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §552, which states that the Legislature is presumed to favor the public interest as against any private interest. Section 58 of that Act declares that the provisions of the law under consideration shall be liberally construed to effect the purpose of the Act and to promote justice.

What the Statute of June 24, 1937, really does is to provide for subrogation and since Anna Petrash as an indigent has consented to the appointment of a guardian limited to her estate, Steele has no standing to assert that this construction of the statute results in a violation of her constitutional rights.

Order reversed and order appointing guardian of the estate reinstated.

Mr. Justice COHEN took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. JUSTICE JONES:

In my opinion, the order of the Court of Common Pleas of Carbon County which appointed a guardian for Ann Petrash was not subject to attack by Bertrand Steele.

Subsequent to the appointment of a guardian for Miss Petrash, her guardian instituted a trespass action against Steele in the United States District Court for the Middle District of Pennsylvania. In the status of a defendant in this trespass action, Steele, in the Court of Common Pleas of Carbon County, then attacked and had the court set aside the appointment of the guardian for Miss Petrash.

In seeking to sustain the action of the court below in revoking the guardian's appointment, it is contended that Steele, by reason of his having been sued for

damages by Miss Petrash's guardian, is a *potential* judgment debtor and, as such, had standing to attack the appointment of the guardian. It is my opinion that Steele had no such standing. An examination of *In The Matter Of Grant Edmundson,* 109 Pa. Superior Ct. 495, 167 A. 502 (1933), upon which Steele relies, indicates that that decision is clearly inapposite. I agree fully with the distinction of the instant case from *Edmundson* drawn by counsel for the guardian: (1) the interest of the person attacking the guardian's appointment in *Edmundson* was not adverse to the ward; it is here; (2) in *Edmundson,* an *actual* debtor, by statute, could have instituted guardianship proceedings but, under the statute involved in this case, only a relief agency under the circumstances had standing to seek the appointment of a guardian; (3) in the instant case, the ward, mentally competent, joined in the request for the appointment of a guardian on her behalf; in *Edmundson,* it was otherwise.

I would reverse the instant order and reinstate the order appointing a guardian for Miss Petrash on the ground that Steele has no standing to challenge the guardian's appointment.

Mr. Justice EAGEN and Mr. Justice ROBERTS join in this concurring opinion.