**WONDER LIFE COMPANY, a corporation, Appellant,**

v.

**L. B. LIDDY, Secretary of Agriculture, State of Iowa, Appellee.**

No. 55579.

Supreme Court of Iowa.

April 25, 1973.

Boyle, Schuler & Oltrogge, Clear Lake, for appellant.

Richard C. Turner, Atty. Gen., Richard E. Haesemeyer, Solicitor Gen., and Elizabeth A. Nolan, Asst. Atty. Gen., Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and HARRIS, JJ.

REES, Justice.

This appeal is from an order and ruling of trial court annulling a writ of certiorari issued in an action brought by plaintiff to test the legality of an administrative ruling of defendant in conjunction with the application of plaintiff for the reissuance and renewal of a permit and license for the sale and distribution of a fertilizer product in keeping with the provisions of chapter 200, The Code, 1966. Trial court found, essentially, the findings of defendant in the administrative hearing conducted by his designated agent were supported by substantial evidence, and annulled the writ. We affirm.

Plaintiff is an Iowa corporation with its principal place of business in Des Moines, and is engaged in the business of selling and distributing Wonder Life Fertilizer 0-0-0 and Wonder Life Trace Mineral Fertilizer 0-0-0 in the State of Iowa. Some time prior to July 28, 1970 plaintiff had made application to defendant in his capacity as Secretary of Agriculture for the issuance of an Iowa fertilizer license to enable it to sell and distribute the products above referred to, and on July 28, after having apparently satisfied defendant it had met all of the requirements for the issuance of a license, Iowa Fertilizer license No. 857 was issued to plaintiff.

On February 15, 1971 defendant directed a letter to plaintiff in which plaintiff was advised:

"The products listed below (referring to the two products marketed by plaintiff) and sold by your company have

been designated by our Chief of Fertilizer Control Division ,as products having a questionable value and benefit to the consumers of Iowa.

"At this time we request that you furnish this Department with all scientific data you have available which substantiates the claims made of your products. If such scientific data is not furnished forthwith to the Department, you will be notified thirty days in advance of a hearing to be held pursuant to section 200.15, Code, 1971. This hearing will determine whether or not your company shall be relicensed for the sale of said products for the year 1971, and whether or not our Department should cancel the registration of said products."

The license which had been issued to plaintiff on July 28, 1970 was to expire on June 30, 1971. Such licenses are renewable under the provisions of section 200.4 of the Code, for annual periods on the payment of a $10 license fee for each plant or place of manufacture from which fertilizer or soil conditioner products are sold or distributed in Iowa.

It is conceded, at least tacitly, that plaintiff furnished no "scientific data" to defendant, or his department, in keeping with the letter of February 15 above referred to. During the month of May, 1971, defendant caused to be served upon plaintiff a written notice notifying plaintiff that a hearing would be held on the 23rd day of June, 1971, to determine whether or not the Secretary of Agriculture should cancel the registration of the aforementioned products of plaintiff pursuant to the provisions of section 200.15, The Code, 1971.

A hearing was held before one Mark Geddes, a hearing officer designated by defendant for the purpose of conducting the hearing; evidence was adduced on the part of plaintiff and on July 19, 1971, the hearing officer filed his findings and recommendations with defendant, in which he recommended that the registrations of "Wonder Life Fertilizer 0–0–0" and "Won-

der Life Trace Minerals 0–0–0" be cancelled and that the application for license for plaintiff company for the fiscal year July 1, 1971 to June 30, 1972, be denied. Subsequently, defendant notified plaintiff company by letter as follows:

"The Secretary has reviewed the findings and recommendations of the Hearing Officer and the evidence submitted at the hearing referred to therein, and hereby exercises his authority under section 200.15, Code, 1971, and orders that the registration of "Wonder Life Fertilizer 0–0–0" and "Wonder Life Fertilizer Trace Minerals 0–0–0" shall be cancelled, and the license for the fiscal year 1971–1972 shall not be issued."

Plaintiff thereupon instituted its action in the Polk County District Court, which culminated in the order and ruling annulling the writ of certiorari issued at the time of the filing of plaintiff's petition. This appeal followed.

As grounds for reversal, plaintiff asserts the following errors:

(1) Trial court erred in failing and refusing to find and determine that defendant denied plaintiff due process of law at the administrative hearing which was instigated and conducted by defendant under the provisions of section 200.15, Code, 1971.

(2) Trial court erred when it considered, applied and based its findings of fact, conclusions of law and order upon sections 200.5(6), 200.5(8) and 200.12, Code, 1971, in annulling the writ of certiorari when the administrative hearing was brought and conducted by defendant under the provisions of section 200.15, Code, 1971.

(3) Trial court erred when it found and determined that "additional data" which defendant required plaintiff to furnish, would include "scientific data".

█ I. Our review here is on errors assigned and is not *de novo*. The scope of our inquiry is limited and we may not set

aside findings of fact if they have support in the evidence, but may only determine whether there is substantial evidence in the record to support such findings and whether the trial court applied a proper rule of law. Zwingle Ind. School Dist. v. State Board of Public Instruction, 160 N.W.2d 299 (Iowa 1968); Board of Education of Green Mountain Ind. School Dist. v. Iowa State Board of Public Instruction, 261 Iowa 1203, 157 N.W.2d 919; Grant v. Norris, 249 Iowa 236, 85 N.W.2d 261.

■ II. We are unable to agree with plaintiff in its contention trial court erred in failing and refusing to find and determine that defendant denied plaintiff due process of law at the administrative hearing. The hearing was held pursuant to notice and ample opportunity was afforded plaintiff to make any showing it desired that it had complied with defendant's requirements for the furnishing of scientific data evidencing and supporting plaintiff's claims its products had value in promoting plant growth, which is a basic requirement for plaintiff's product to be categorized as a fertilizer in keeping with the definition of fertilizer as set forth in section 200.3 of the Code. It had been directed to furnish such data by defendant's letter of February 15, 1971.

■ We agree with plaintiff in the general proposition that a license to engage in a lawful business or profession is a valuable right which cannot be destroyed in violation of due process. However, as we construe chapter 200, The Code, we conclude the responsibility and obligation of the Secretary of Agriculture in licensing manufacturers or purveyors of fertilizer compounds is a continuing one, and the Secretary is permitted and obligated to police the industry. The fact plaintiff had been issued a license for the fiscal year 1970 gave it no vested right to a renewal of the license unless it satisfied the requirements of the department by furnishing the data substantiating the claims made for its products.

■■ Plaintiff contends the license law (chapter 200, The Code) was adopted for the purpose of its effect on trade or to remove competition, and needlessly interferes with lawful occupations and, therefore, it is class legislation and constitutes the taking of property without due process. We disagree. The enactment of chapter 200 demonstrates a proper public interest on the part of the Legislature, and prohibits manufacturers or purveyors of fertilizers from representing that their products have value in promoting plant growth unless such manufacturers or purveyors are able to establish such claims. Defendant was obviously requiring plaintiff to conclusively establish that its products had benefit to the consumers of Iowa. The data required was not furnished, and the renewal of the license was properly denied.

■ Plaintiff further contends plaintiff was denied due process when defendant arbitrarily, capriciously and illegally placed the burden of proof upon plaintiff at the administrative hearing. Trial court found, and we agree, that in administrative proceedings, as well as in court proceedings, the burden of proof, apart from statute, is on the party asserting the affirmative of an issue. There is no statute, so far as we have been able to determine, fixing the burden of proof in cases such as the one under consideration here. We conclude plaintiff had pleaded and relied upon an affirmative proposition; that is, that it had been issued a license and was entitled to a renewal thereof, and having pleaded and relied upon such affirmative allegations plaintiff was required to carry the burden of proving it. See rule 344(f)(5), Rules of Civil Procedure.

We are unable to agree with plaintiff it was denied due process of law at the administrative hearing.

III. Plaintiff contends trial court erred when it considered, applied and based its findings of fact, conclusions of law and order upon sections 200.5(6), 200.5(8) and 200.12, The Code, 1971, in annulling the

writ of certiorari, when the administrative proceeding was brought and conducted by defendant under the provisions of section 200.15, The Code, 1971.

In this contention, plaintiff emphasizes the fact that at the commencement of the administrative hearing, in response to a question put to him, the hearing officer acknowledged the hearing was being conducted under the provisions of section 200.15, The Code, and plaintiff, therefore, asserts it is obvious the provisions of sections 200.5(6), 200.5(8) and 200.12, The Code, were not applicable to the administrative hearing.

Section 200.5(6) authorizes the Secretary, whenever he deems it necessary in the administration of chapter 200, to require the submission of additional data about any fertilizer or product to support the claims made for it. Section 200.5(8) places the responsibility for submitting satisfactory evidence of favorable effects and safety of a product upon the registrant. Section 200.12 provides that a commercial fertilizer or soil conditioner is misbranded if it does not identify substances promoting plant growth as defined in sub-section 1 of section 200.3, or if it carries any false or misleading statement upon, or attached to, the container or stated on the invoice or delivery ticket. It provides specifically that the burden of proof of the desirable effect of the product on plant growth shall be the responsibility of the licensee.

Section 200.15, The Code, with which section we are principally concerned, provides as follows:

"The secretary is authorized and empowered to cancel the registration of any product of commercial fertilizer or soil conditioner or license or to refuse to register any product of commercial fertilizer or soil conditioner or refuse to license any applicant as herein provided, upon satisfactory evidence that the registrant or licensee has used fraudulent or deceptive practices or who willfully violates any provisions of this chapter or

any rules and regulations promulgated thereunder: Except no registration or license shall be revoked or refused until the registrant or licensee shall have been given the opportunity to appear for a hearing by the secretary."

The present chapter 200, The Code, was enacted in its present form by the 61st General Assembly in 1965. The entire precedent chapter was repealed, and chapter 200 as it now appears in our codified law was then enacted. We deem it unrealistic to contend that any isolated section of chapter 200 must be read, applied or construed alone, as each and every section of chapter 200 must be read and construed in *pari materia* with each and every other section of chapter 200. Obviously, section 200.15 has reference back to section 200.12, and also has reference to section 200.3(1).

As to the rule of *pari materia*, we have consistently held that statutes relating to the same subject matter, or to closely-allied subjects, must be construed, considered and examined in the light of their common purposes and intent. Northwestern Bell Telephone Co. v. Hawkeye State Telephone Co., 165 N.W.2d 771, 774 (Iowa 1969); Story County v. Hansen, 178 Iowa 452, 159 N.W. 1000; State v. Zellmer, 202 Iowa 638, 210 N.W. 774, 775; 82 C.J.S. Statutes § 366, pages 810–812; 50 Am.Jur., Statutes, § 349, pages 345–349.

At 82 C.J.S. Statutes § 366, pages 810–812, we find:

"The court must harmonize statutes relating to the same subject, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious system or body of legislation, if possible. The statutes should be so construed as to give meaning to all of them, if this can be done, and each statute should be afforded a field of operation. So, where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated,

the courts must construe the statutes to reflect the obvious intent of the legislature and permit the practical application of the statutes. It has also been held that whatever has been determined in the interpretation of one of several statutes in pari materia is a sound rule of interpretation for the others."

Like statements appear at 50 Am.Jur., Statutes, §§ 348 to 351, inclusive.

 We hold, therefore, the fact the hearing officer indicated at the commencement of the hearing that the proceedings were being conducted under the provisions of section 200.15, The Code, has no significance, as the defendant-Secretary is obligated to enforce all of the provisions of the fertilizer law embraced in chapter 200, and that section 200.15 is *in pari materia* with each and every other section of said chapter, and must be construed with such other sections.

IV. Section 200.5(6), The Code, provides:

"The secretary, whenever he deems it necessary in the administration of this chapter, may require the submission of additional data about any fertilizer or product to support the claims made for it. If it appears to the secretary that the composition of the article is such as to warrant the claims made for it, and if the article, its labeling and other material required to be submitted, comply with the requirements of this chapter, he shall register the product."

In his letter of February 15, defendant required and requested plaintiff to "furnish this department with all scientific data you have available which substantiates the claims made of your products."

Plaintiff contends that the language of section 200.5(6) requiring the submission of additional data does not *ipso facto* permit the Secretary to require the furnishing of scientific data. Trial court, however, found that "additional data" would include "scientific data", and we agree.

Plaintiff cites many authorities to support this proposition, as well as all other propositions urged for reversal. While we have read the cited authorities, they have not been of particular benefit or value to us in reaching our determination, as our responsibility in this case is to construe specific statutes and we must apply well recognized rules of statutory construction.

We conclude, as did the trial court, the words "additional data" necessarily includes "scientific data" within the purview and contemplation of section 200.5(6), The Code.

V. From a review of the whole record, and a consideration of the briefs of authorities and arguments of plaintiff and defendant, we conclude the trial court was correct in its conclusion that under the evidence the hearing officer correctly found plaintiff had not proved a desirable effect of its products on plant growth. Trial court thereupon found there was sufficient competent evidence in the record to support the findings of the hearing officer, and we agree.

This case is therefore affirmed.

Affirmed.