STATE, Respondent v. WILLIAMSON, Appellant

(211 N.W.2d 182)

(File No. 11166. Opinion filed October 16, 1973)

Thomas Vickerman, Asst. Atty. Gen., Pierre (**Gordon Mydland**, Atty. Gen., Pierre, **Paul J. Kern**, State's Atty., Charles Mix County, on the brief), for plaintiff and respondent.

R. **James Zieser**, Tyndall, for defendant and appellant.

DOYLE, Justice.

This is an appeal by defendant from a judgment of conviction in the Circuit Court of Charles Mix County, South Dakota.

The defendant, Richard Williamson, is an enrolled member of the Yankton Sioux Tribe. On December 14, 1971, the defendant entered a plea of guilty in circuit court to four counts of "obtaining money under false pretenses" and was sentenced to four separate two-year terms in the state penitentiary, the same to run concurrently. The offenses were committed in the cities of Lake Andes and Wagner, South Dakota. In this appeal defendant contends that the State of South Dakota had no jurisdiction to prosecute and convict him since the cities of Lake Andes and Wagner are within the boundaries of the Yankton Sioux Reservation and, therefore, in "Indian Country".

██ The term "Indian Country" is defined in 18 U.S.C.A. § 1151 as "all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent." Act of June 25, 1948, 62 Stat. 757. The law is established that state jurisdiction does not

extend to Indians in Indian Country.* Williams v. Lee, 1959, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251; State of Arizona ex rel. Merrill v. Turtle, 1969, 9 Cir., 413 F.2d 683; Seymour v. Superintendent of Washington State Penitentiary, 1962, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346; The City of New Town, North Dakota v. United States, 1972, 8 Cir., 454 F.2d 121; United States ex rel. Condon v. Erickson, D.C.S.D., 344 F.Supp. 777; State v. Molash, 1972, 86 S.D. 558, 199 N.W.2d 591.

Our decision, therefore, turns on the resolution of the narrow question of whether the cities of Lake Andes and Wagner are within "Indian Country". In order to determine this issue, it is necessary to review the specific treaties, agreements and Acts of Congress dealing with this particular reservation.

The Yankton Sioux Reservation was created by the Treaty of April 19, 1858, 11 Stat. 743, ratified February 16, 1859, Proclamation February 26, 1859; Vol. 1 SDCL p. 74. The boundaries of the Yankton Sioux Reservation, as so established, included the land upon which the cities of Lake Andes and Wagner are presently located. The Yankton Tribe and the United States entered into an agreement, Act of August 15, 1894, 28 Stat. 286, 314, Vol. 1 SDCL p. 137, whereby the Tribe sold a portion of its reservation to the United States. The portion so sold included the cities of Lake Andes and Wagner. This agreement, in part, provided:

Article I.

"The Yankton tribe of Dakota or Sioux Indians hereby cede, sell, relinquish, and convey to the United States all their claim, right, title, and interest in and to

---

* If the law were otherwise, there would have been no need for the standing invitation of the Federal Government for the state to assume jurisdiction over Indians in Indian country, without the consent of the Indians under the Act of August 15, 1953, c. 505, Sec. 7, 67 Stat. 588, and with the consent of the Indians under the Indian Council Rights Act of April 11, 1968, Title IV, §§ 401(a), 402(a), 82 Stat. 73 at 78, 79; 25 U.S.C.A. §§ 1321(a), 1322(a). The South Dakota Legislature undertook to accept such jurisdiction in Ch. 464, S.L.1961, approved March 9, 1961, but the people of South Dakota, by popular referendum, voided the legislative action.

all the unallotted lands within the limits of the reservation set apart to said Indians as aforesaid."

## Article II.

"In consideration for the lands ceded, sold, relinquished, and conveyed to the United States as aforesaid, the United States stipulates and agrees to pay to the said Yankton tribe of Sioux Indians the sum of six hundred thousand dollars ($600,000), as hereinbefore provided for."

 It is our opinion that this agreement, the Act of 1894, clearly, by its own terms, was an outright cession and sale by the Yankton Tribe of its unallotted lands within the resevation to the United States. The rules of statutory construction are to discover the true intention of the law. 82 C.J.S. Statutes § 311. The intention is to be ascertained by the court primarily from the language used in the statute. 82 C.J.S. Statutes § 322 b(1). Where a tribe sells and the United States pays for all tribal interests, nothing is left in the tribe. It is an absolute conveyance. The land is severed from the reservation and is no longer "Indian Country". Wood v. Jameson, 1964, 81 S.D. 12, 130 N.W.2d 95; Application of DeMarrias, 1958, 77 S.D. 294, 91 N.W.2d 480; State v. DeMarrias, 1961, 79 S.D. 1, 107 N.W.2d 255, cert. den. 368 U.S. 844, 82 S.Ct. 72, 7 L.Ed.2d 42; DeMarrias v. State of South Dakota, 1962, D.C.S.D., 206 F.Supp. 549; DeMarrias v. State of South Dakota, 1963, 8 Cir., 319 F.2d 845.

In summary, then, we hold that the Act of 1894 disestablished that portion of the Yankton Reservation which was ceded and sold to the United States, and which embodied the land upon which the cities of Lake Andes and Wagner are located. Therefore, these cities are not within "Indian Country" as defined in 18 U.S.C.A. §§ 1151, 1152, 1153; consequently, the State of South Dakota had jurisdiction to prosecute and convict the defendant for crimes committed within these towns.

Affirmed.

WINANS and DUNN, JJ., concur.

BIEGELMEIER, C. J., and WOLLMAN, J., concur specially.

WOLLMAN, Justice (concurring specially).

Although I would join in the majority opinion if the record established the facts necessary to make a determination on the merits, my reading of the record does not permit me to do so.

Defendant pleaded guilty to the offenses charged in the information; consequently, there was no challenge to the jurisdiction of the court on the grounds that the defendant was a duly enrolled member of the Yankton Sioux Tribe and that the offenses charged occurred in Indian Country. This case reaches us on a direct appeal from defendant's conviction on his guilty plea, rather than by way of an attack on his conviction by a petition filed under the provisions of the Post-Conviction Procedure Act, SDCL 23-52. Thus we are left without any findings by the lower court on the important jurisdictional questions presented in this appeal. Although the briefs refer to a stipulation that defendant is an enrolled member of the Yankton Sioux Tribe, I have been unable to find any such stipulation in the settled record. Moreover, I find no record evidence that the places where the alleged offenses occurred were within the original boundaries of the Yankton Reservation, either on allotted or unallotted lands.

If I could take the existence of these jurisdictional facts on faith, I would agree with the holding that the offenses in question were not committed within Indian Country. To me the Act of 1894, 28 Stat. 286, expresses a congressional determination to terminate the reservation status of the portion of the reservation ceded, sold, relinquished and conveyed to the United States by the Yankton Tribe. Cf. Mattz v. Arnett, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed. 2d 92; United States ex rel. Condon v. Erickson, 8 Cir., 478 F.2d 684.

I would affirm the conviction on the basis of the record before us.

I am authorized to say that Chief Justice BIEGELMEIER joins in this special concurrence.