Sister Mary Allan GOURLEY, Plaintiff and Respondent,

v.

BOARD OF TRUSTEES OF SOUTH DAKOTA RETIREMENT SYSTEM and South Dakota Division of Retirement and Insurance, Defendants and Appellants.

No. 12766.

Supreme Court of South Dakota.

Argued Nov. 16, 1979.

Decided Feb. 27, 1980.

Mary Ellen McEldowney, Black Hills Legal Services, Rapid City, for plaintiff and respondent.

Roger L. Severns, Jr., Atty., S.D. Retirement System, Pierre, Mark V. Meierhenry, Atty. Gen., Pierre, for defendants and appellants; David O. Carter, Asst. Atty. Gen., Pierre, on brief.

MORGAN, Justice.

This is an appeal from a decision of the Circuit Court, Seventh Judicial Circuit, which reversed a decision of the Board of Trustees of the South Dakota Retirement System (Board), denying disability benefits to a member of the system, the respondent, Sister Mary Allan Gourley (Member). We affirm.

Member is a sixty-one year old Catholic nun who holds a bachelor's degree in social sciences, English, and education as well as masters' degrees in administration and guidance and counseling. The Douglas School District, Ellsworth Air Force Base, employed her in 1970 as an assistant principal at the high school. In 1975 she was promoted to the position of principal of Douglas' junior high school.

In November of 1975 Member requested and was granted sick leave without pay. She did not return to work until April of 1976. At that time, she was relieved of her principalship. Besides the November through April absence, Member missed nineteen other days of school during the 1975–76 school year because of illness.

Following Member's return to work, the school superintendent recommended that she be reassigned as a high school English teacher. The superintendent's reason for changing her position was essentially that he was concerned about her health and felt that the teaching job would be less strenuous than the administrative position.

Member's supervising principal testified at the hearing before the Board that Member's performance as a teacher was more than satisfactory but her excessive absences were disruptive in maintaining necessary classroom continuity. He therefore recommended that her contract not be renewed for the 1977–78 school year. Member requested him to reconsider his recommendation but he declined because, in his estimation, she was unable to handle the stress attendant with the position. He further stated that he would not recommend that she be hired as an administrator, a teacher or a substitute, either full-time or part-time.

Member was not hired for the 1977-78 school year and proceeded to initiate a grievance against the board of education of the Douglas School District. The grievance was denied because it was an improper subject for a grievance. Consequently, Member followed an alternative avenue under the school's grievance procedure and requested a hearing before the Board. A hearing was scheduled but was never held because she withdrew her request after deciding that the superintendent was correct in determining that she was unable to perform her duties.

In August of 1977 Member filed an Application for Disability Benefits with the South Dakota Division of Retirement and Insurance. The application was denied both initially and after reconsideration. Member appealed the denial to the Board and a hearing was held on June 2, 1978. The Board also denied the application and entered findings of fact, conclusions of law and a final decision on August 14, 1978.

Member then appealed the Board's denial to the circuit court, which reversed the Board's decision. The circuit court determined that the Board had misinterpreted the requirements of SDCL 3–12–47(18) and that the decision was not supported by substantial evidence. The court first remanded the case to the Board for the purpose of ascertaining the degree of Member's disability. Upon a motion for reconsideration, however, the court entered an amended order which reversed the Board's decision and ordered that Member's application for disability be approved. The Board appeals from the circuit court's amended order.

■ In appeals from an agency decision pursuant to the Administrative Procedures Act (SDCL 1–26), this court must make the same review of the agency's decision as did the circuit court. *Application of Mont.-Dak. Util. Co., Etc.*, 278 N.W.2d 189 (S.D. 1978); *Piper v. Neighborhood Youth Corps*, 241 N.W.2d 868 (S.D.1976). In the instant case the trial court applied the "substantial evidence" test which means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. SDCL 1–26–1(8).[1] This court, however, must make its review unaided by any presumption that the circuit court's decision is correct. *Vetter v. Town of Bison*, 278 N.W.2d 202 (S.D.1979); *Application of Mont.-Dak. Util. Co., Etc.*, supra.

■ The proper inquiry is whether there is substantial evidence on the whole record to support the Board's findings, not whether there is substantial evidence contrary to the Board's findings. *Application of Mont.-Dak. Util. Co., Etc.*, supra; *Application of Phillips & Sons Company*, 86 S.D. 326, 195 N.W.2d 400 (1972). Thus, this court may not substitute its own judgment for the Board's judgment as to the weight of the evidence on questions of fact and the credibility of testimony. *City of Brookings v. Dept. of Environ. Prot.*, 274 N.W.2d 887 (S.D.1979).

The pertinent statutes which outline the criteria for establishing the existence of a disability are contained in SDCL Ch. 3–12. SDCL 3–12–47(18) defines "disability" or "disabled" as:

> [A]ny medically determinable physical or mental impairment which prevents a member [of the South Dakota Retirement System] from performing his usual duties for his employer; or the duties of a position of comparable level for which he is qualified by education, training and experience, and excludes any condition resulting from willful, self-inflicted injury.

SDCL 3–12–98 provides further qualifications by limiting disability benefits to members who have rendered three or more years of credited service immediately prior to becoming disabled, or who are disabled by accidental means while performing their usual duties and whose disability is expected to be "of long, continued and indefinite duration of at least one year."

It was therefore incumbent on respondent to show (1) that she suffers from a physical or mental impairment; (2) that the impairment is medically determinable; (3) that the impairment can be expected to last at least one year; and (4) that she had at least three years of credited service prior to becoming disabled.[2] The Board argues that Member must also show that the disability will prevent her from performing her usual duties as well as the duties of a position of comparable level for which she is qualified, even though the statute uses the word "or" between the two phrases.

■ As pointed out by the Board, Member has not challenged the ruling of the chairman at the hearing that the burden of proof was on her to show that she is entitled to disability benefits. This ruling is in accord with the generally accepted rule that the moving party has the burden of going forward as well as the burden of persuasion in administrative hearings. See, e. g., *Wonder Life Company v. Liddy*, 207 N.W.2d 27 (Iowa 1973).

The Board first complains that the trial court erred in finding their decision is not supported by substantial evidence on the whole record and by substituting its judgment for that of the Board as to the weight of the evidence.

A review of the record discloses that Member does indeed have several health impairments, and the Board does not dis-

1. The circuit court heard the appeal subsequent to July of 1978 when the scope of judicial review of administrative decisions under SDCL 1–26–36 was changed from the "substantial evidence" test to the "clearly erroneous" test. However, counsel for the respective parties agreed that the circuit court should apply the standard which was in force at the time of the June 2, 1978 hearing and therefore, this court must also apply the "substantial evidence" test.

2. No issue is raised as to Member's qualification under (1) and (4).

pute this. From 1973 through April of 1977, Member had the following ailments: (1) Acute pulmonary insufficiency due to pneumonitis; (2) congestive heart failure; (3) arteriosclerotic heart disease; (4) obesity; (5) diabetes; (6) acute gastroenteritis (twice); (7) hiatal hernia; (8) mild degenerative arthritis; (9) pneumonia; and (10) pulmonary fibrosis.

 The findings of the Board took each health complaint one by one and found each insufficient to qualify the Member for disability. The Board, however, failed to review the Member's complaints in their totality. We believe this presents an entirely different picture. The Board lost sight of the forest for the trees. The view in totality is the view that the school authorities took when they first relieved the Member of her administrative duties and subsequently of her teaching duties. This is the picture the administration had in mind when they said that they could not recommend her for even part-time employment. When a teacher ,is absent due to illness to the degree that the Member was, the administration could hardly be faulted for their attitude. While the Board was correct as to the various findings of each of the doctors with respect to each of the various complaints, it totally ignored a substantial part of the evidence which was the testimony on behalf of the school administration. School administrators hire teachers, doctors do not. The Board did not find or suggest that the Member is a malingerer, nor does the record suggest such to be the case. As the trial court noted, she has worked since the age of twelve and testimony showed that she frequently came to work or stayed when she was in fact ill. We agree with the trial court that after viewing the entire record, the Board's decision as to the lack of medically determinable impairment which prevents her from performing her usual duties is not supported by substantial evidence.

The Board next complains that the trial court erred in finding that the statute, SDCL 3–12–47(18), reads in the disjunctive. The Board urges that the statute should be read in the conjunctive and as so read the Member wholly failed to establish disability from performing duties of a position of comparable level.

As this court recently held in *State Theatre Co. v. Smith*, 276 N.W.2d 259 (S.D.1979), at 263: "The purpose of rules regarding the construction of statutes is to discover the true intention of the law and said intention is to be ascertained by the court primarily from the language expressed in the statute." Citing *State v. Williamson*, 87 S.D. 512, 211 N.W.2d 182 (1973).

Further, in *State Highway Com'n Etc. v. Wieczorek*, 248 N.W.2d 369 (S.D.1976), at 372, we held: "It is a well founded legal principle that when the language of the statute is clear, certain and unambiguous, there is no occasion for construction and the court's only function is to declare the meaning of the statute as clearly expressed in the statute."

 Member urges that the language of the statute is clear and unambiguous and therefore not subject to judicial construction in accord with *Wieczorek*, supra. We disagree, for in reading the statute in its present context, reading "or" as "or" we cannot perceive of a situation where the second test could or should be applicable in and of itself. If one can perform the usual duties of his employer then there is no need to invoke the test of performance of duties of a position of a comparable level. The better interpretation would seem to be one requiring the Member to first satisfy the test of inability to perform his usual duties of his employer *and* then satisfy the test of performance of duties of a position of a comparable level. As the Supreme Court of Pennsylvania noted in *In re Petrash*, 425 Pa. 433, 437, 229 A.2d 878, 879 (1967), citing *United States v. Fisk*, 3 Wall. 445, 447, 70 U.S. 445, 447, 18 L.Ed. 243, 244 (1866): " ' "In the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled *to construe 'or' as meaning 'and,'* and again *'and' as meaning 'or.'* " ' " (emphasis in original).

We therefore hold that in order to effectuate the intent of the legislature and to accomplish the purpose of the statute the "or" should be read as "and" and the tests applied conjunctively.

The trial court did find:

This Court does not accept Respondents' contention, however, that "or" in the statute means "and", and that [Member] must show she is also unable to perform in any other type of comparable position.

Nevertheless, he then went on to state:

She is trained as an administrator and her former employer relieved her of that position because of her health. She is also an experienced teacher and her employer has refused to renew her contract because of her health. The Superintendent for the Douglas School System has testified that he will not rehire [Member] *or recommend her to another employer, even for part-time employment.*

(Emphasis added.)

While we hold that the trial court erred in its ruling on the law, such error would be harmless if the entire record supports its finding as a matter of fact, that the member was unable to obtain other, even part-time, employment as a teacher or administrator.

▮ The Board strongly urges that the Member failed to meet her burden of going forward with proof to show that she is entitled to disability benefits under the second criteria. Again we disagree, as did the trial court relying on the testimony of the school administration that not only would they not renew her contract, but they would not recommend her to another employer, even for part-time employment. The Member was trained as an administrator and as a teacher. Her experience is in school administration and teaching. Solely because of her health problem she cannot get a recommendation for employment in either position from her previous employer. We hold that she made a prima facie showing that she qualified under the latter aspect of the statute. We cannot conceive of a rule that would require an applicant for benefits to go beyond such a showing with a litany of possible positions and proof of her failure to obtain employment therein. Where would it end? The Board does not suggest any position that would qualify as a position of comparable level, nor does the record reflect any other comparable position that she could hold considering her health condition. Certainly a part-time job is not a position of comparable level.

We hold that the trial court did in fact conclude that the Member qualified for disability benefits under the latter aspect of the statute, which conclusion is supported by the record viewed in its entirety, and we therefore affirm the decision of the trial court.

DUNN and HENDERSON and FOSHEIM , JJ., concur.

WOLLMAN, C. J., concurs in part and dissents in part.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I agree with the majority opinion that SDCL 3–12–47(18) must be read in the conjunctive.

I cannot agree, however, that the trial court concluded that appellee qualified for benefits under the "position of comparable level" standard of SDCL 3–12–47(18). Even appellee does not advance that argument, understandably so in view of that portion of the trial court's order that states:

[Appellee's] application for disability benefits under the South Dakota Retirement System should be approved because she is suffering from medically determinable physical or mental impairments *which prevent her from performing her usual duties for her employer* . . . .. (emphasis added)

It is one thing to say that appellee is no longer able to function as a school administrator; it is quite another to say that she is incapable of performing the duties of a position of comparable level, for surely that phrase must be descriptive of a fairly broad range of alternative tasks.

That appellee is suffering from several physical ailments is not open to question. The nature, extent, and consequences of these ailments are in question, however, and it is for the Board as the finder of fact to weigh the evidence and to draw such inferences as are permissible. The proper scope of judicial review of an agency decision is set forth in *City of Brookings v. Dept. of Environ. Prot.*, 274 N.W.2d 887 (S.D.1979). Under that scope of review, it is not for a reviewing court to conclude that the Board failed to consider appellee's ailments in their totality. It was for the Board to determine the individual and collective impact of appellee's ailments, and the Board's conclusion that appellee had failed to carry her burden of establishing that she is unable to perform her usual duties or the duties of a position of comparable level makes clear that the Board did exactly what the majority now says it should have done.

The Board bears a heavy responsibility, both to claimants such as appellee and to the entire membership of the retirement system. Surely the Board must not impose such exacting requirements of proof of disability as to disqualify any but the moribund member from benefits, but I fear that the majority has underestimated the adverse effects upon the system that may result from requiring only a prima facie showing of disability. To say that the record does not reflect that any other comparable positions were available to appellee is to disregard the testimony of the superintendent of the Douglas School System that he had offered appellee a research position, or appellee's own testimony regarding the administrative position offered to her by her church or the career counseling position offered to her by a Rapid City financial institution. It was for the Board to determine whether appellee was physically disabled from accepting these positions and whether they constituted positions of comparable level.

I would reverse the decision of the circuit court and remand for reinstatement of the Board's decision.