## Boyer v. Hicks

*Eugene Steger*, for plaintiffs.
*Edmund K. John*, for defendants.

GAWTHROP, *J.*, February 26, 1981—This case requires us to construe a provision of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, sec. 107, 40 P.S. §1009.107. Because of the issue's novelty and its chance for frequent recurrence, we opine.

Plaintiffs have sued in trespass to recover $641.75 in damages to their car, allegedly caused by the negligence of defendants. In addition to compensation for property damage, plaintiffs seek an award of attorney's fees in the amount of $800, or in the alternative, $1,200, under the statutory provisions of 40 P.S. §1009.107 and 42 Pa.C.S.A. §2503.

To this, defendants have filed preliminary objections in the form of a motion to strike paragraphs 9 and 10 of counts I, II, and III of the complaint (claims for attorney's fees), and a demurrer to count III (alternate claim for attorney's fees).

Plaintiffs base their claims for attorney's fees on section 7 of the Act of July 19, 1974, P.L. 489, sec. 107, 40 P.S. §1009.107(3), which states in pertinent part:

"If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereto without reasonable foundation, the court may award the claimant's attorney a reasonable fee based on actual time expended."

In invoking this statutory provision, plaintiffs allege that defendants have refused to inform their insurance carrier of plaintiffs' claim, have prohibited plaintiffs from contacting said insurance carrier, and have thereby deprived plaintiffs from recovering no-fault benefits.

We note preliminarily that no-fault benefits are defined as "basic loss benefits, added loss benefits, or both." § 1009.103. The recovery herein sought by plaintiffs is solely for damage to their car, allegedly sustained while the car was legally parked and unattended. The act specifically excludes compensation for property damage from "basic loss benefits," such being available under "added loss benefits," according to section 1009.207 which provides: "Obligors providing security for the payment of basic loss benefits shall offer or obligate themselves to provide added loss benefits for injury or damage arising out of the ownership, maintenance, or use of a motor vehicle, including . . . (5) benefits for physical damage to a motor vehicle. . . ."

The first question raised by defendants in their preliminary objections is whether the relationship of the parties is such that the No-fault Act creates in defendants a duty to provide no-fault benefits to plaintiffs. We find that they had no such duty.

Under the No-fault Act, every owner of a motor vehicle must "continuously provide security covering such motor vehicle . . . for the payment of basic loss benefits. . . . The owner or any other person

may provide [such] security . . . by a contract of insurance with an insurer or by qualifying as a self-insurer or as an obligated government." 40 P.S. § 1009.104(a). The term "obligor" as defined in section 1009.103 refers to the "insurer, self-insurer, or obligated government providing no-fault benefits. . . ." as required by section 1009.104(a), supra.

Plaintiffs' claim for attorney's fees under section 1009.107 is contingent on a finding that defendants are obligors within that definition, i.e., that they have provided security for plaintiffs' vehicle as required under the act, and are therefore bound to provide no-fault benefits to plaintiffs. There is no allegation that defendants have provided such security for plaintiffs' vehicle as insurers. Plaintiffs in their brief attempt to justify their reliance on the No-fault Act in their prayer for attorney's fees by contending that there is nothing on the record to show that defendants were not self-insured. This contention is irrelevant to the question before us. The fact of defendants' status as self-insurers, if proved, would affect only the security covering their own vehicle, not that of plaintiffs. The label "self-insurer" cannot in itself define defendants as obligors to plaintiffs under the act. Such interpretation would lead to the incongruous result that all self-insurers become obligated to provide no-fault benefits to all other motor vehicle owners by the simple fact of their self-insurance, despite the lack of an insurance contract or other consideration from other vehicle owners. The status of obligor arises not from the label of insurer, self-insurer, or obligated government, but from the act of providing security for the payment of no-fault benefits for the particular vehicle or claimant in question. No duty to secure another's vehicle can be construed from the act of securing one's own.

This issue is further clarified by 31 Pa. Code §66.56(1), which sets standards for minimum added loss benefits, providing that such benefits are to "cover the 'insured' as defined in Section 103 of the Act (40 P.S. §1009.103)."[1] Clearly, in the absence of allegations that defendants are plaintiffs' insurer, no obligation to provide added loss benefits can be found.

Plaintiffs' cause of action is solely one in trespass based on defendants' alleged negligence. The No-fault Act creates no duties between the parties; accordingly, plaintiffs' reliance on that act in their claim for attorney's fees is unfounded.

Plaintiffs also seek an award of attorney's fees under the more general provisions of 42 Pa.C.S.A. §2503 which reads in pertinent part: "(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter."

As set forth in their complaint, plaintiffs' claim under 42 Pa.C.S.A. §2503 is predicated on a finding of defendants' breach of duty under the No-fault Act. Although we have previously had occasion to

---

1. "'Insured' means: (A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and (B) a spouse or other relative of a named insured, a minor in the custody of a relative of a named insured if—(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and (ii) in residence in the same household with a named insured. An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere."

mention[2] and to apply[3] this relatively new statutory rule, which we deem to have excellent purpose, both prophylactic and compensatory, we have never taken the occasion to subject it to actual analysis. We do so now.

We first consider the meaning of the statutory language "dilatory, obdurate, or vexatious." Generally, the language of a statute must be construed according to its common and approved usage: Com. v. Hill, 481 Pa. 37, 391 A. 2d 1303 (1978); Pennsylvania Consolidated Statutes, 1 Pa.C.S.A. § 1903(a). Hence, we turn to the dictionary: Merriam-Webster defines "dilatory" as "tending or having the intent to cause delay," "vexatious" as "lacking justification and intended to harass," and "obdurate" as "resistant to persuasion or softening influences: inflexible, unyielding." Webster's 3rd New International Dictionary of the English Language. Certain of these definitions, standing alone,[4] do not strike this writer as providing proper basis for the rather punitive sanction of the imposition of attorney's fees. Most discovery procedures, for example, tend to cause delay. And although we frequently see abuse of discovery rules, perpetrated largely for the purpose of delay, the assessment of attorney's fees for the legitimate, albeit delaying or "dilatory," exercise of one's right to take some time to find out about one's opponent's case, would surely abuse

2. Phillips v. Bailey, 11 D. & C. 3d 45, 26 Chester 338 (1978).

3. Bogley, Harting & Reese, Inc. v. Stuart, 11 D. & C. 3d 303, 27 Chester 396 (1979); Merrill Lynch v. McWilliams (No. 132 Nov. Term, 1976).

4. We note that the legislature has seen fit to use the disjunctive: "or."

discretion. We believe a better test is set forth in the summary judgment rule, Pa.R.C.P. 1035(f), containing an earlier attorney's-fees assessment provision, which draws the line at conduct "in bad faith or solely for the purpose of delay."

So also, with respect to the proscribed "obdurate" conduct, we believe there is something to be said for tenacity. Canon Seven of the Code of Professional Responsibility reminds us that "a lawyer should represent a client zealously within the bounds of the law." This broad injunction is tempered somewhat by Ethical Consideration 7-4:

"The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a *good faith* argument for an extension, modification, or reversal of the law. *However, a lawyer is not justified in asserting a position in litigation that is frivolous.*" (Emphasis supplied.)

Nevertheless, in Bernotas v. Chester County Water Resources Authority, 27 Chester 375, 378 (1978), a case in which the condemnees "availed themselves of the opportunities to litigate every conceivable aspect of the case to prevent turning over actual possession. . . .," this court, speaking through President Judge Marrone, declined to shift the burden of costs,[5] stating: "That they were un-

---

5. Under section 519 of the Eminent Domain Code, Act of June 22, 1964 P.L. (Sp. Sess.) 84, 26 P.S. §1-519 [repealed, see now 42 Pa.C.S.A. §1726], which provides for costs, including "such other costs as the court in the interests of justice may allow" to be borne by condemnor "unless the court in a proper case shall otherwise direct."

successful in most instances is of no moment. Their tenacity, in the opinion of the Court, is not grounds to hold that this is a proper case in which to direct that taxable costs be paid by Condemnees." This language reminds us not only that one may legitimately fight the good fight, but also that the mere happening of an adverse result does not necessarily brand the loser's position as one of spurious frivolity. Many is the unpredictable verdict, the four-three or five-four appellate decision.[6]

Beyond the statutory authority for assessment of counsel fees, we note that the Supreme Court of the United States has but recently recognized the problem of counsel acting in bad faith:

"Due to sloth, inattention, or desire to seize tactical advantage, lawyers have long indulged in dilatory practices. Cf. C. Dickens, Bleak House 2-5 (1948). A number of factors legitimately may lengthen a lawsuit, and the parties themselves may cause some of the delays. Nevertheless, many actions are extended unnecessarily by lawyers who exploit or abuse judicial procedures, especially the liberal rules for pretrial discovery. [Citations omitted.] The glacial pace of much litigation breeds frustration with the federal courts and, ultimately, disrespect for the law." Roadway Express, Inc. v. Piper, 447 U.S. 752, 757, fn.4, 100 S.Ct. 2455, 2459, n.4, 65 L.Ed. 2d 488, 495, fn.4 (1980).

In response, it has reaffirmed its recognition of a court's inherent power to assess counsel fees "in response to abusive litigation practices," approving their imposition for the " " "willful disobedience of a

---

6. Or see, for example, Com. v. Hayes, 489 Pa. 419, 414 A. 2d 318 (1980), a 1-1-1-1-3 decision; Com. v. Hoskins, ____ Pa. ____, 432 A. 2d 149 (1981), a 2-1-3 affirmance by an equally divided court.

court order [citations omitted] . . ."" or when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . ."" Roadway Express, supra, at 447 U.S. 765, 766, 100 S.Ct. 2455, 2463, 2464, 65 L.Ed. 2d 488, 500, 501 (1980).

In so noting, Mr. Justice Powell, speaking for the majority, stated:

"The power of a court over members of its bar is at least as great as its authority over litigants. [fn., citing cases, omitted.] If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif. L. Rev. 264, 268 (1979)."

With respect to the power to assess personally against counsel rather than against the party-client, Mr. Justice Blackmun cogently observed in concurrence: "'Elemental notions of fairness dictate that one who causes a loss should bear the loss'" at 447 U.S. 768, 100 S.Ct. 2455, 2465, 65 L.Ed. 2d, 488, 502 (concurring opinion).

With this background in mind, we return to a consideration of the language of the specific statute before us, and in particular, the legislature's use of the disjunctive "or" connecting the three words, "dilatory," "obvious," or "vexatious." As to that small but significant word, it has been noted: "'"Or" obviously is a disjunctive article and means one or the other of two propositions; never both.'" Bensalem Township School District v. Bucks County Commissioners, 8 Pa. Commonwealth Ct. 411, 421, 303 A. 2d 258, 265 (1973). Its literal disjunctive meaning notwithstanding, in the statutory construction context it has often been read to

signify the conjunctive. As Judge Rogers noted in Appeal of Martin, 33 Pa. Commonwealth Ct. 303, 306, 381 A. 2d 1321, 1322 (1978):

"In this connection, it is well to recall that it is the duty of the courts to ascertain the intention of the legislature and that in doing so courts are often compelled to construe 'and' as meaning 'or' and again 'or' as meaning 'and'. Petrash Guardianship, 425 Pa. 433, 229 A. 2d 878 (1967)."

Considering the legislative purpose, then, and recognizing that the legislature intended a reasonable result (see: 1 Pa.C.S.A. §1922(1)), we believe that the words "dilatory, obdurate or vexatious" should be applied conjunctively, calling for the imposition of counsel not for mere delay, but only when thee has been bad faith, intentional delay of a case, where a plaintiff's underlying claim has been "frivolous, unreasonable or groundless." Roadway Express, Inc. v. Piper, supra, at 447 U.S. 762, 100 U.S. 2455, 2462, 65 L.Ed. 2d 488, 498, or where there has been a wilful disobedience of a court order. On those occasions, however, we believe that the assessment of attorney's fees, and assessment upon counsel rather than client, if indeed it is counsel who is the culpable party, is exemplary and appropriate, not only our lawful right, but our duty. Only then can the actual economic burden of litigation, of fending off the frivolous, be justly lifted from the innocent, to be properly borne by the blameworthy.

Returning to the facts at bar, notwithstanding our firm belief that the attorney's fees sanction when properly used is a commendable procedural tool, we nevertheless recall our earlier discussion

recognizing counsel's right tenaciously to press a cause of arguable merit. We further recall that even if a judge or jury ultimately finds that cause to be wanting, such a result does not brand that argument with baseless frivolity ab initio; nor does it, in hindsight, brand the vanquished advocate with bad faith. It has recently been held that "[t]he absence of legal clairvoyance is not the same as legal malpractice." Ruchti v. Goldfein, 7 Family Law Reporter 1045, 2176, 2177 (Calif. Ct. App. 4th D. 1980). A fortiori does it fall short of bad faith. See: Clements v. Corson,[7] 29 Chester 208 (1981); Haschak v. Escapade, Inc., 13 D. & C. 3d 240, 242 (1980).

Accordingly, we make the following

ORDER

Defendants' motion to strike those portions of plaintiffs' complaint addressing the issue of attorney's fees is hereby granted. Defendants' demurrer to count III of plaintiffs' complaint is hereby sustained. Defendant is given 20 days from this date to file a responsive pleading.

---

7. Although we fully agree with Judge Wood's holding in that support case, we observe that many a nonsupport proceeding, particularly during the attachment or contempt phases, bears every hallmark of being a worthy candidate for the assessment of counsel fees.